RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0226P (6th Cir.)
File Name: 00a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARY C. MCKENZIE,
　　　*Plaintiff-Appellant,*

　　　*v.*

BELLSOUTH
TELECOMMUNICATIONS, INC.,
d/b/a South Central Bell
Telephone Company,
　　　*Defendant-Appellee.*

No. 99-5584

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 94-00730—R. Allan Edgar, Chief District Judge.

Argued: March 17, 2000

Decided and Filed: July 12, 2000

Before: NORRIS, MOORE, and COLE, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Leonard Egan, Washington, D.C., for Appellant.
Arthur G. Seymour, Jr., FRANTZ, McCONNELL &
SEYMOUR, Knoxville, Tennessee, for Appellee.
**ON BRIEF:** Leonard Egan, Washington, D.C., Stephen R.

1

Felson, FELSON & FELSON, Cincinnati, Ohio, for Appellant. Arthur G. Seymour, Jr., FRANTZ, McCONNELL & SEYMOUR, Knoxville, Tennessee, Fred A. Walters, BELLSOUTH TELECOMMUNICATIONS, INC., Atlanta, Georgia, for Appellee.

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge.  Plaintiff-Appellant, Mary McKenzie, appeals the district court's grant of summary judgment for Defendant-Appellee, BellSouth Telecommunications Inc. ("BellSouth"), in her action alleging that BellSouth harassed and discharged her in violation of the *qui tam*[1] provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3730.  Section 3730(h) of the FCA prohibits retaliation against employees engaged in the protected activity of investigating possible fraud against the United States government.  McKenzie's § 3730(h) retaliation claim was one part of her original *qui tam* action alleging that BellSouth committed fraud against the United States government.  After the district court dismissed McKenzie's *qui tam* action, which we subsequently affirmed in part and remanded in part for further proceedings on the § 3730(h) retaliation claim, the district court granted summary judgment for BellSouth on the

_____

[1] A *qui tam* action is a whistleblower claim

brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act, and provides that the same shall be recoverable in a civil action, part of the penalty to go to any person who will bring such action and the remainder to go to the state or some other institution.

BLACK'S LAW DICTIONARY 1251 (6th ed. 1990). *Qui tam* is derived from the "Latin phrase 'qui tam pro domino rege quam pro si ipso in hac parte sequiter' meaning 'Who sues on behalf of the King as well as for himself.'" *Id.*

## IV.  CONCLUSION

We **AFFIRM** the district court's grant of summary judgment for BellSouth, finding that McKenzie has failed to set forth genuine issues of material fact with respect to BellSouth's awareness that she was engaged in activity which reasonably could lead to a *qui tam* action under the FCA, or that she was contemplating such an action.

retaliation claim.  Now, McKenzie appeals the district court's grant of summary judgment for BellSouth, contending that sufficient evidence existed to establish that BellSouth was aware that she was contemplating a *qui tam* suit under the FCA, as required by § 3730(h).

For the following reasons, we **AFFIRM** the district court's grant of summary judgment for BellSouth.

## I.  BACKGROUND

The facts developed in our prior decision in this matter are not disputed by either McKenzie or BellSouth.   In McKenzie's prior appeal, we stated:

McKenzie was an employee of BellSouth's subsidiary, South Central Bell, from December 1966 until March 1992 when she left work on permanent disability status. For most of her career at [BellSouth] McKenzie was a dispatcher for the company's maintenance technicians. This position included receiving and processing complaints about telephone service, dispatching repair personnel, and closing these "trouble reports" once repairs were completed.

[BellSouth] provides telephone service throughout Tennessee, Kentucky, Alabama, Mississippi, and Louisiana and its customers include the Tennessee Valley Authority and a Department of Energy facility at Oak Ridge, Tennessee, both federal facilities.   When a telephone line is out of service for more than 24 hours, [BellSouth] must refund the cost of that day's service for those customers who request a refund, except in the following circumstances: service is diminished but the line is not completely out of service; repairs are impossible because the customer's premises are inaccessible; the condition is reported by an employee and not the customer; and the customer extends the period of time for repairs to be completed.

According to McKenzie's complaint, [BellSouth], to avoid having to make refunds to the United States and other customers, falsified trouble reports so that it would appear that lines were repaired within 24 hours or that one of the exceptions applied. McKenzie says that she and other dispatchers routinely misclassified telephone lines as either in service or diminished service when the lines were actually out of service, reported that service had been restored within 24 hours when it had not been, reported that premises were inaccessible when they were not, and misclassified trouble reports as having been initiated by a [BellSouth] employee when they were actually initiated by the customer.

McKenzie began complaining to her supervisors at [BellSouth] about these practices in 1984 and continued to complain until she left her position on disability status. On one occasion McKenzie showed her supervisor a newspaper article describing a similar fraud being perpetrated in Florida. McKenzie claims that as a result of her complaints she was harassed and threatened with discharge. After suffering two emotional breakdowns a company psychiatrist placed McKenzie on permanent disability leave.

McKenzie filed suit under the FCA, which allows individuals with information regarding the commission of fraud against the United States to bring suit on the government's behalf. McKenzie also brought a retaliation claim on her own behalf under 31 U.S.C. § 3730(h).

*United States ex. rel. McKenzie v. BellSouth Telecomm. Inc.*, 123 F.3d 935, 937-38 (6th Cir. 1997) (footnotes omitted), *cert. denied*, 522 U.S. 1077 (1998).

The district court dismissed McKenzie's *qui tam* action, finding that McKenzie failed to state a valid claim. On appeal, this court affirmed the district court's dismissal of the *qui tam* action, but reversed and remanded the § 3730(h) retaliation claim. *See id.*, 123 F.3d at 943-44. Finding that

way to make an employer aware. But it is not the only way.

153 F.3d at 743.

In the present case, McKenzie complained about the pressure to falsify records from repairmen whose compensation was tied to the repair records, but was not investigating or reporting suspected fraud to her employer. McKenzie has alleged no evidence that supports that her employer, BellSouth, was aware of her protected activity – because the evidence shows that her activities were not protected under the Act. Without additional evidence to establish that BellSouth may have been placed on notice that McKenzie's complaints could reasonably lead to a *qui tam* action, McKenzie has failed to establish a factual issue with respect to BellSouth's awareness that her actions were protected. We find that McKenzie has provided no evidence raising a genuine issue of material fact that BellSouth was placed on notice that she was contemplating a claim under the FCA or allegations of federal government fraud.

### 3. Discharge "because of" Plaintiff's Protected Activity

The district court concluded that there was no genuine issue of material fact demonstrating that McKenzie's discharge was because of activities which the employer had reason to believe were taken in contemplation of a *qui tam* action against the employer. The FCA's legislative history states that the employee must show that "the retaliation was motivated at least in part by the employee's engaging in protected activity." S. REP. NO. 99-345, at 35, *reprinted in* 1986 U.S.C.C.A.N. at 5300. McKenzie has failed to show that her discharge was "because of" the protected activity or that BellSouth was aware of her "protected activity," and thus, BellSouth's termination of McKenzie could not have been motivated by her protected activity. Accordingly, the district court correctly granted summary judgment in favor of BellSouth on McKenzie's § 3730(h) retaliation claim.

by the state of Florida did not create a genuine issue of material fact regarding a "reasonable possibility" of a *qui tam* action pursuant to the FCA.

## 2. Employer's Knowledge of the Employee's Protected Activity

In *McKenzie*, this court adopted the district court's holding in *Mikes*, which required the following:

> An employee must supply sufficient facts from which a reasonable jury could conclude that the employee was discharged because of activities which gave the employer reason to believe that the employee was contemplating a *qui tam* action against it.

*McKenzie*, 123 F.3d at 944 (quoting *Mikes*, 889 F. Supp. at 753).

Even assuming that McKenzie engaged in protected activity by her refusal to falsify repair records, there is no evidence that BellSouth had reason to believe a *qui tam* action was a "distinct possibility" or was being "contemplated" by McKenzie. The newspaper article McKenzie alleges placed BellSouth on notice of a similar *qui tam* action pursued in Florida did not relate to a *qui tam* action and only discussed a consumer fraud investigation by the Florida state attorney general and four Florida administrative agencies. It is not necessary that McKenzie know the particulars of an FCA action or *qui tam* possibility or use appropriate language when internally reporting wrongdoing, but she must set forth some connection to fraudulent or false claims against the federal government. In *Yesudian*, the D.C. Circuit stated that

> a plaintiff still must show that his employer was aware of his protected activity. Merely grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the requirement – just as it does not constitute protected activity in the first place. Threatening to file a *qui tam* suit or to make a report to the government is one

McKenzie's complaint had "adequately alleged that her employer was aware that she was contemplating pursuing a *qui tam* action under the FCA," and thus had sufficiently stated a claim for retaliation under § 3730(h) of the FCA, this court remanded the retaliation claim for further discovery. *Id*. at 945.

On remand, the parties produced additional evidence underlying McKenzie's retaliation claims. The additional evidence consisted of 1) depositions from McKenzie and her husband, concerning her retaliation allegations, and 2) the Miami Herald newspaper article described in McKenzie's complaint.[2] Based on this evidence, BellSouth moved for summary judgment. On March 31, 1999, the district court granted summary judgment for BellSouth, finding that McKenzie provided no evidence that "adequately alleged that her employer was aware that she was contemplating pursuing a *qui tam* action under the FCA." McKenzie appeals the district court's grant of summary judgment for BellSouth.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, using the same Fed. R. Civ. P. 56(c) standard as the district court. *See Godfredson v. Hess & Clark, Inc.*, 173

---

[2]Paragraph 82 of McKenzie's complaint stated that:

> On or about January 20, 1992, Ms. McKenzie refused to falsify a Trouble Report for a repair technician named Watson who had missed a repair commitment. Watson asked Ms. McKenzie to transfer his call to Ms. McKenzie's supervisor, Jo Ella Crum. Ms. Crum took the call and found another SCB employee, Teresa Daniels, to make the requested falsification. Later, Ms. Crum asked Ms. McKenzie why she would not handle the call. Ms. McKenzie told Ms. Crum that to falsify the records was a serious matter. Ms. McKenzie also showed Ms. Crum a copy of a newspaper article about a similar fraud being perpetuated in Florida.

JA at 38.

F.3d 365, 370-71 (6th Cir. 1999). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party shows this absence, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To meet this burden, the nonmoving party may not rest on the mere allegations in the pleadings. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986).

### III.  ANALYSIS

### A.  Law of the Case

As a threshold argument, McKenzie contends that the district court and this court are bound by the law-of-the-case doctrine, which precludes reconsideration of issues decided at an earlier stage of the case.[3] *See United States v. Moored*, 38

---

[3]Concerning the law-of-the-case doctrine , this court has previously stated that:

> It is clear that when a case has been remanded by an appellate court, the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." The "law of the case" doctrine

newspaper article describing a similar *qui tam* claim or fraud against the federal government, McKenzie's alleged protected activities consisted of refusing to falsify records which she knew were internal records used to determine refunds for BellSouth customers. Although McKenzie's deposition testimony shows that she knew these refunds included government and consumer BellSouth customers, they do not establish the necessary nexus to a potential FCA-based *qui tam* action. Assuming that McKenzie's falsification complaints have merit and that she understood that BellSouth's consumers were potentially being defrauded, her numerous complaints on the matter were directed at the stress from and pressure to falsify  records, not toward an investigation into fraud on the federal government.

McKenzie testified that she discussed record falsification in 1988-89 with a BellSouth auditor, Juanita Reeves, and her union shop steward, but acknowledged that these discussions contained no allegations of government fraud. The remaining complaints about the pressure to falsify records and the newspaper article do not establish a nexus to government fraud or create a reasonable possibility of an action or litigation under the FCA. Accordingly, McKenzie has failed to establish that she engaged in "protected activity" under § 3730(h). Although internal reporting of suspected fraud or false claims can form the basis of "protected activity" under the Act,  the internal reporting of wrongdoing, such as McKenzie's complaints to BellSouth auditors, must establish some nexus to the FCA to satisfy the "in furtherance of" prong of an FCA claim, by reasonably leading to a viable FCA action. *See Yesudian*, 153 F.3d at 740; *Hopper*, 91 F.3d at 1269. McKenzie has failed to show that her actions were in furtherance of a FCA claim; thus, the district court properly granted summary judgment for BellSouth on her§ 3730(h) retaliation claim.

In sum, we find that McKenzie's complaints about falsification of BellSouth's repair records and distribution of a newspaper article generally describing a fraud investigation

regulations but detailing fraudulent practices. *See Yesudian*, 153 F.3d at 744 (distinguishing *Hopper*, *Ramseyer* and *Robertson* and finding that plaintiff was not merely encouraging compliance with state or federal law as in *Hopper*, or complaining of non-compliance in accordance with his job duties as in *Ramseyer* and *Robertson*).[5]

Unlike the plaintiff in *Yesudian*, McKenzie has not taken action in furtherance of a *qui tam* action under the FCA. When McKenzie brought her complaints to the attention of the BellSouth auditor and her supervisors, legal action was not a reasonable or distinct possibility. Although the newspaper article distributed and posted by McKenzie shows awareness of consumer fraud, the "in furtherance of" language requires more than merely reporting wrongdoing to supervisors. *See Eberhardt*, 167 F.3d at 868 (holding that merely reporting concerns of mischarging a government project or investigating an employer's non-compliance with federal or state regulations was insufficient to constitute "protected activity" under the FCA ); *Zahodnick*, 135 F.3d at 914; *Yesudian*, 153 F.3d at 740. *But see Mikes v. Strauss*, 889 F. Supp. 746, 753 (S.D.N.Y. 1995) (finding that plaintiff's observation and investigation outside scope of employment coupled with confronting employer with evidence of mischarging Medicare patients was sufficient to establish FCA claim). In the present case, McKenzie's repeated refusals to falsify repair records and numerous complaints to supervisors are not sufficiently connected to exposing fraud or false claims against the federal government. Absent the

---

[5] A line of cases has distinguished between employees who investigate government payments or billings as a part of their job descriptions and those employees who step outside of their job functions to investigate potential government fraud claims. *See, e.g., Eberhardt v. Integrated Design & Constr. Inc.*, 167 F.3d 861, 867-69 (4th Cir. 1999) (discussing investigation of a *qui tam* claim and requirements for employees, whose job functions include investigation of government billing or fraud, to establish a § 3730(h) retaliation claim) (citing *Ramseyer*, 90 F.3d at 1523; *Robertson*, 32 F.3d at 951).

F.3d 1419, 1421-22 (6th Cir. 1994) (under the law-of-the-case doctrine, a district court is precluded from revisiting an issue that was expressly or impliedly decided by an appellate court). Thus, McKenzie contends the district court erred by granting summary judgment to BellSouth, because this court's prior opinion determined that she had stated a valid claim for retaliation under the facts as alleged in her complaint.

This court has confined the law-of-the-case doctrine to the mandate of the reviewing court's opinion and the portions of the opinion incorporated into the mandate. *See Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992) (discussing the "mandate rule" as a "specific application of the law of the case doctrine"). In determining what the trial court may consider on remand, this court observed that, "[a]s with all applications of the law-of-the-case doctrine, the trial court may consider those issues not decided expressly or impliedly by the appellate court or a previous trial court." *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)). Thus, we must consider this court's mandate to the district court to determine the scope of the law-of-the-case doctrine in this instance.

---

precludes a court from "reconsideration of identical issues." "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case."
    As we have held, however, this "law of the case" doctrine is "directed to a court's common sense" and is not an "inexorable command." We previously have stated three reasons to reconsider a ruling: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.

*Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir. 1973)).

In *McKenzie*, this court stated that "the district court improperly dismissed McKenzie's claim for retaliation because she . . . adequately alleged that her employer was aware that she was contemplating pursuing a *qui tam* action under the FCA." 123 F.3d at 945. We also stated, however, that "[d]iscovery shall reveal whether these allegations can be supported." *Id*. at 945. Thus, we acknowledged that McKenzie's case had been dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See id.* at 938. We further acknowledged that discovery would develop the factual allegations of the complaint. *See id*. at 945. Accordingly, our holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery. *Cf. Wilcox v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) (holding that a trial court's denial of a preliminary injunction did not establish the law of the case with respect to the district court's subsequent summary judgment determination).

## B.  Retaliation Claim

The FCA protects "whistleblowers" who pursue or investigate or otherwise contribute to a *qui tam* action, exposing fraud against the United States government. *See* 31 U.S.C. §§ 3729-3730. Section 3730(h) of the FCA states, in pertinent part, that:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

46;  *United States ex rel Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996); *Neal*, 33 F.3d at 865.   Thus, we must make an inquiry into whether McKenzie's actions sufficiently furthered "an action filed or to be filed under" the FCA and, thus, equated to "protected activity."

In order to defeat summary judgment McKenzie must raise a genuine issue of material fact that she engaged in "protected activity," defined as that activity which reasonably could lead to a viable FCA action. *See Yesudian*, 153 F.3d at 740; *Hopper,* 91 F.3d at 1269. McKenzie need not use formal words of "illegality" or "fraud," *see Robertson*, 32 F.3d at 951-52, but must sufficiently allege activity with a nexus to a *qui tam* action, or fraud against the United States government.

In the present case, McKenzie claims that she engaged in protected activity when she informed supervisors, union stewards, and BellSouth auditors about the falsification of repair records. Although internal reporting may constitute protected activity, the internal reports must allege fraud on the government. *See Robertson*, 32 F.3d at 951; *Hopper,* 91 F.3d at 1269. In *Hopper*, the Ninth Circuit found that an employee who wrote seventy letters and made fifty phone calls to government authorities to force her school district to comply with Federal and California regulations was not engaged in furthering an action under the FCA and, thus, not engaged in protected activity.  *See* 91 F.3d at 1269.   In *Yesudian*, however, the D.C. Circuit found that an employee who wrote numerous memorandums to the vice president of a university, detailing fraud allegations in a purchasing department connected to federal government-based procurement, and who met with the vice president to deliver additional proof of fraud in procurement, was engaged in protected activity under the FCA. *See* 153 F.3d at 740. The *Yesudian* court noted that the university employee, unlike the plaintiffs in *Robertson* and *Hopper*, investigated fraud outside of the scope his employment and was not merely urging compliance with

*Hopper*, 91 F.3d at 1269 (9th Cir. 1996); *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996); *Neal v. Honeywell Inc.*, 33 F.3d 860, 864 (7th Cir. 1994). These courts interpret the "in furtherance of" language to require the plaintiff to be "investigating matters that reasonably could lead to a viable False Claims Act case." *Yesudian*, 153 F.3d at 740; *see also Hopper*, 91 F.3d at 1269 (equating "in furtherance of" to require that "plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action"). In addition, circuits have equated "protected activity" to acts which carry a "distinct possibility" of suit under the FCA. *See Childree*, 92 F.3d at 1146 (stating that "protection is available . . . where the filing of [a false claims] action, by either the employee or the government, was a 'distinct possibility' at the time the assistance was rendered"); *Neal*, 33 F.3d at 864 (finding that "litigation was a distinct possibility" at the time of the investigation when the plaintiff reported wrong doing through corporate channels).

This case law indicates that "protected activity" requires a nexus with the "in furtherance of" prong of an FCA action. *See Yesudian*, 153 F.3d at 740. In *McKenzie*, this court noted that "protected activity should be interpreted broadly." 123 F.3d at 839. The legislative history directive to "broadly construe" the plaintiff's "protected activity," however, does not eliminate the necessity that the actions be reasonably connected to the FCA, which was designed to encourage and protect federal whistleblowers. *See* S. REP. NO. 99-345, at 35, *reprinted in* 1986 U.S.C.C.A.N. at 5300 (encouraging those that "may be considering exposing fraud . . . from retaliatory acts"). The enumerated examples of "protected activity" in § 3730(h)--"investigation for, initiation of, testimony for, or assistance in an action"--are not exhaustive; however, the "protected activity" must relate to "exposing fraud" or "involvement with a false claims disclosure." *See id.*. An employee, however, need not expressly know that the FCA allows *qui tam* actions to be filed against their employer, or have already filed such an action to be protected from retaliation under § 3730(h). *See Childree*, 92 F.3d at 1144-

31 U.S.C. § 3730(h). To establish an action under § 3730(h) the plaintiff must prove 1) she was engaged in a protected activity; and 2) that her employer knew about it. *McKenzie*, 123 F.3d at 944 (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)). In addition, the *McKenzie* court recognized a third element of a retaliation claim: that the employer must have discharged or otherwise discriminated against the employee as a result of the protected activity. *See McKenzie*, 123 F.3d at 944; *see also Eberhardt v. Integrated Design & Constr. Inc.*, 167 F.3d 861, 866 (4th Cir. 1999); *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).[4]

Given the additional evidence before the court in support of her complaint, McKenzie contends that the district court erred in finding that her actions were not protected activity under the FCA. In response, BellSouth contends that McKenzie failed to produce any evidence that she engaged in protected activity, or that BellSouth was aware that she engaged in protected activity that could lead to a *qui tam* action under the FCA.

---

[4]Although the FCA retaliation claim is sometimes discussed as requiring a two part test, *see Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1051 n.11 (N.D. Ill. 1998) (discussing two element versus three element construction of FCA retaliation claims), § 3730(h) indicates that a FCA retaliation claim must demonstrate that 1) the employee engaged in "protected activity", which is "acts done . . . in furtherance of an action under this section"; and 2) the employee was discriminated against or discharged "because of" that protected acitivty. 31 U.S.C. § 3730(h). The "because of" prong, however, requires the employee to show that (a) "the employer had knowledge the employee was engaged in protected activity"; and (b) "the retaliation was motivated, at least in part, by the employee's engaging in protected activity." S. REP. NO. 99-345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5300; *see also Yesudian*, 153 F.3d at 736 (D.C. Cir. 1998).

## 1. Protected Activity

In McKenzie's first appeal, this court found that McKenzie's complaint adequately alleged that she engaged in "protected activity," taking the complaint's allegations as true. *See McKenzie*, 123 F.3d at 944 ("We conclude that the activity engaged in by McKenzie, including bringing the alleged fraud to the attention of her supervisors and showing them a newspaper article describing a *qui tam* action in Florida involving similar allegations of fraud, are protected activities within the meaning of the Act."). The statute requires that "protected activity" be "done . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 37320(h). The legislative history, approvingly cited by this court in *McKenzie*, states that "protection should extend not only to actual *qui tam* litigants, but those who assist or testify for the litigant, as well as those who assist the Government in bringing a false claims action. *Protected activity should therefore be interpreted broadly*." S. REP. NO. 99-345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5300 (emphasis added); *see also McKenzie*, 123 F.3d at 944 (quoting emphasized language). Noting that the actions expressly described as "protected activity" were not exclusive, this court held that 1) McKenzie's showing of the newspaper article involving federal government fraud to her supervisors, and 2) bringing the alleged government fraud to the attention of her supervisors were within the meaning of "protected activity" under the FCA. *See McKenzie*, 123 F.3d at 944.

On remand, the district court found that the newspaper article described in the complaint neither alleged fraud against the federal government, referred to *qui tam* litigation, nor referred to the FCA. Further, the district court found that McKenzie's deposition showed that the newspaper article in question, which addressed a Florida state investigation of BellSouth's record falsification and allegations of consumer and public utility commission fraud, was widely displayed

and disseminated throughout McKenzie's Tennessee BellSouth office. From McKenzie's deposition testimony and the newspaper article, the district court concluded that there was no "protected activity" in showing the article to her supervisors sometime prior to McKenzie's refusal to falsify repair records.

McKenzie contends that the district court misconstrued this court's findings and ignored this court's holding that internal reporting of fraud alone constitutes protected activity. McKenzie avers that the district court erred when it required her to both internally report the fraud and show her supervisor the newspaper article describing a federal *qui tam* action to constitute "protected activity" under the FCA. Indeed, the D.C. Circuit has cited this court's opinion in *McKenzie* for the proposition that "internal reporting of false claims is itself an example of a protected activity." *See Yesudian*, 153 F.3d at 731 n.9 (citing *McKenzie*, 123 F.3d at 944; *Robertson*, 32 F.3d at 951).

In *Robertson*, the Fifth Circuit noted that several district courts have found that § 3730(h) protects internal whistleblowers who report to the company that they are "concerned about defrauding the government." 32 F.3d at 951 (citing district court cases, but finding that plaintiff failed to inform his company that he suspected possible fraud, illegality, or unlawful activities and thus did not engage in "protected activity" under the FCA). The *Robertson* court relied on the requirement that the employee must express concern about suspected "fraud" or "illegality" against the government to his company, and not simply general procedural concerns, to satisfy the "protected activity" prong of the retaliation claim. *See id*. at 950-52.

Several circuits have eschewed the formalistic approach set forth by the Fifth Circuit in *Robertson*, turning instead to the § 3730(h) requirement that "protected activity" is "acts done . . . in furtherance of . . . an action filed or to be filed under this section." *See Yesudian*, 153 F.3d at 740 (D.C. Cir. 1998);