In re Mark BRUMBAUGH and Rachel Brumbaugh, Debtors.

Mark Brumbaugh and Rachel Brumbaugh, Plaintiffs,

v.

United States of America, Internal Revenue Service, Defendants.

Bankruptcy No. 00–33453.
Adversary No. 00–3120.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Aug. 27, 2001.

Roger E. Luring, Troy, OH, for debtors.

Dale Ann Goldberg, Dayton, OH, for United States of America, Internal Revenue Service.

Townsend Foster, Jr., Troy, OH, Chapter 7 Trustee.

## MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, Jr., Bankruptcy Judge.

The debtors, Mark and Rachel Brumbaugh ("Debtors" or the "Brumbaughs"), and the United States, on behalf of the Internal Revenue Service (the "IRS"), have filed cross-motions for summary judgment seeking a determination of the dischargeability of certain tax debts. The specific issues before the Court are: (1) whether altered IRS Form 1040s filed by the Brumbaughs for tax years 1993 and 1994 should be deemed to be "returns" for purposes of § 523(a)(1)(B) of the Bankruptcy Code (the "Code"); and (2) whether the Brumbaughs willfully attempted to evade or defeat their federal income tax obligations within the meaning of § 523(a)(1)(C) of the Code. The Court concludes that the Brumbaughs' tax obligations are nondischargeable under both § 523(a)(1)(B) and § 523(a)(1)(C).

### I. *Jurisdiction*

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

### II. *Factual and Procedural Background*

The Debtors filed a joint Chapter 7 petition on July 2, 2000. Their schedules list the IRS as the holder of a priority unsecured claim in the amount of $52,024.70 for 1993 and 1994 income taxes assessed on February 23, 1998 (the "Tax Debt"). The Debtors filed this adversary proceeding seeking a determination that the Tax Debt is dischargeable.

The cross motions for summary judgment filed by the parties are not supported by affidavits, although exhibits are attached to each motion. The Brumbaughs

have attached four exhibits to their summary judgment motion. Exhibit 1 is a copy of the Brumbaughs' 1993 Form 1040 U.S. Individual Income Tax Return dated May 17, 1995. Exhibit 2 is a copy of their 1994 Form 1040 U.S. Individual Income Tax Return dated May 17, 1994. Since the 1994 return would not have been due until 1995, the date on Exhibit 2 appears to be erroneous—it probably should read May 17, 1995. Exhibit 3 is a copy of a letter from the IRS to the Brumbaughs dated November 22, 1996 (the "November 1996 Letter"). The letter informed the Brumbaughs that because they provided insufficient information to explain various items reported on the Form 1040s, the IRS had issued a document entitled "Form 4549— Income Tax Examination Changes." The letter directed the Brumbaughs either to execute and return the Form 4549 or contact the IRS to take proper steps to resolve the matter by no later than December 16, 1996. Exhibit 4 is a Notice of Federal Tax Lien issued November 3, 1998, reflecting the assessment of $52,024.70 made on February 23, 1998.

The summary judgment motion filed by the IRS is accompanied by the following exhibits (which are not identified by number or letter designations): (1) a copy of the Brumbaughs' 1994 Form 1040 U.S. Individual Tax Return; (2) two copies of a document entitled "Revocation of Powers of Attorney and Agency (of any alleged by the I.R.S. over me respecting Federal Income taxes) by Notice of Lawful Nontaxpayer Status and Rescission of My Signature on all I.R.S. Forms Obtained Under Threat, Duress and Fraud," one of which is executed by Mark Brumbaugh and the other by Rachel Brumbaugh (the "Revoca-

tions"); (3) a copy of Mark Brumbaugh's 1994 W–2 Wage and Tax Statement from Brumbaugh Construction, Inc.; (4) a copy of a letter dated June 23, 1995 to the Brumbaughs from the IRS, which informed them that their 1994 tax return was deemed a frivolous return (the "June 1995 Letter"); (5) a letter dated August 5, 1996 from the IRS to the Brumbaughs informing them that their 1993 tax return was assigned to IRS Agent Christina Riggs for examination (the "August 1996 Letter"); (6) a copy of an August 24, 1996 letter from Mark Brumbaugh to the IRS in which he advised the IRS that it must furnish him with the law or regulation that "makes [him] liable for income taxes....[or] the audit is cancelled;" (7) a copy of an envelope addressed to the IRS in Cincinnati, Ohio, bearing the Brumbaughs' return address and an illegible postmark date; (8) a copy of an IRS Special Handling Form; and (9) two copies of an IRS form entitled "Notice of Deficiency" with various attachments, including a Notice of Deficiency–Waiver form dated September 24, 1997 (the "Waiver").[1]

The facts gleaned from the exhibits attached to the cross-motions are neither complex nor disputed. The Brumbaughs made filings with the IRS for tax years 1993 and 1994 on IRS official Form 1040s that were altered in several significant respects. A review of the Form 1040s reveals that identical changes were made to both the 1993 and 1994 forms. Line 23 of the 1993 form and line 22 of the 1994 form, which require the taxpayer to compute total income, were obliterated and replaced with the following typewritten phrase: "Non–Taxable Compensation [EISNER MACOMBER 252 U.S. 189]." Following

---

1. While the documents attached to the cross-motions did not comport with the requirements of Fed.R.Civ.P. 56(e) (due to lack of authentication), the parties—apparently by agreement—elected to proceed in this man-

ner. Thus, any objections to the Court's consideration of the documents attached to the cross-motions due to technical noncompliance with Rule 56(e) are hereby deemed waived.

this notation is the figure $25,205 on the 1993 form and $31,447 on the 1994 form. Adjusted gross income is reported as $3,027 in 1993 and $158.00 in 1994. The Brumbaughs listed the standard deduction for "married filing jointly" on both the 1993 and 1994 Form 1040s. In 1993, that amount was $6200; in 1994, it was $6350. Line 23b, which requires a taxpayer to list a spouse's IRA deduction, was altered to read "26 CFR ('39) 9.22(b)(1)." Line 25, which normally reads "One-half of self-employment tax," was altered to read "Compensation Exclusion." Line 37, which should read "Taxable income," was again obliterated on each return, with the phrase "Non–Taxable Compensation [EIS-NER MACOMBER 252 U.S. 189]" typed in its place. On line 37, the amounts $25,205 and $31,447 were reported for 1993 and 1994, respectively. Both purported returns state that no tax is due and request a refund of all income tax withheld. At the bottom of each purported return, the Brumbaughs obliterated the jurat on the Form 1040s that stated: "Under penalties of perjury, I declare that I have examined this return and accompanying

schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." The jurat was replaced with the following typewritten declaration: "Under the penalty of perjury under the laws of the United States of America, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct and complete." *See* Debtors' Exhibits 1 and 2.

The Debtors' altered Form 1040s (the "Altered Forms") were accompanied by the Revocations—notarized documents executed by Mark Brumbaugh and Rachel Brumbaugh containing voluminous citations to various cases and statutes that purport to establish that the Debtors are not subject to income taxation. The Revocations recite a number of stock arguments commonly asserted by tax protesters,[2] including the following statements and allegations:

13. For purposes of establishing my status; and to establish the burden of proof of such status:

---

**2.** "[A] [t]ax [p]rotester generally is a person that questions or challenges the constitutionality of income or other taxes and refuses to pay based upon that belief." *In re Hazel*, 68 B.R. 287 n. 1 (Bankr.E.D.Mich.1986), *aff'd*, 95 B.R. 481 (E.D.Mich.1988). Tax protesters frequently cite—as the Brumbaughs did on the Altered Forms—the Supreme Court's decision in *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920) as authority for a general challenge to the income tax system. *Id.* at 287 n. 2. In *Eisner*, the Court held that a "dividend of common stock to the holders of the common stock was not income to the stockholders taxable by Congress under the Sixteenth Amendment, in that it did not alter the preexisting proportionate interest of any stockholder or increase the intrinsic value of his holding or of the aggregate holdings of the other stockholders as they stood before." *Chamberlin v. Commissioner*, 207 F.2d 462, 466 (6th Cir.1953), *cert. denied*, 347 U.S. 918, 74 S.Ct. 516, 98 L.Ed. 1073 (1954). Relying

on language in the *Eisner* decision that income for tax purposes includes "gains derived from capital, labor, or both combined," 252 U.S. at 207, 40 S.Ct. 189 (citation omitted), tax protesters contend that the exchange for wages is an equivalent one—i.e., a transaction in which no gain and, thus, no taxable income is derived. This "equal exchange" argument has been categorically rejected in every case in which it has been raised. *See, e.g., Sisemore v. United States*, 797 F.2d 268, 270 (6th Cir.1986) ("The courts which have considered this [equal exchange] position have uniformly rejected it as patently without merit...."); *Funk v. Commissioner*, 687 F.2d 264, 265 (8th Cir.1982) ("Taxpayers' argument that compensation for labor is not constitutionally subject to the federal income tax is without merit."); *Lonsdale v. Commissioner*, 661 F.2d 71, 72 (5th Cir.1981) (per curiam) (same); *United States v. Buras*, 633 F.2d 1356, 1361 (9th Cir.1980) (same).

I deny that there is a law that made me formerly or makes me currently a taxpayer regarding income taxes;

And I declare that the I.R.S. has failed to produce and show the law that made me formerly or makes me currently a taxpayer regarding income taxes; because there is no such law[.]

14. Therefore, I, MARK BRUMBAUGH, hereby declare and re-establish that I am lawfully a sovereign NONTAXPAYER, as pertaining to Federal income taxes on privileged activities, as a matter of God-given Common Law and Sovereign Right, as shown above.

15. I, MARK BRUMBAUGH, of "We the People" sovereignty, was MIS-INFORMED and FRAUDULENTLY INDUCED to believe I was a taxpayer, by deceptive and misleading words and statements in the Internal Revenue Code, as well as deceptive and misleading I.R.S. publications, advertisements and I.R.S. generated news articles by certain OUTLAWS operating outside of law and office in outlawry: who are fraudulently claiming to act as agents of the U.S. Government through its alleged Internal Revenue Service (yet actually acting for the privately owned and deceptively named Federal Reserve System.)

16. Such Outlaws have placed me under incessant and continuing THREAT and DURESS (constructive extortion over the years) through their notorious advertisements and literature; purposely designed to fraudulently convince me that they are going to do something mean, bad and awful to me; if I do not file alleged income tax forms and pay alleged income taxes.

(Such "mean, bad and awful" things include: charging me with a crime of willful failure to file and pay income taxes and/or that they will lien, levy, seize and sell by [sic] property, belongings, assets and home.)

Citing this alleged misconduct by the IRS, paragraph 19 of the Revocations provides that both Debtors:

[D]o hereby revoke, rescind, cancel and do render null and void, both currently and retroactively to include the time of signing (based upon fraud and the constructive fraud and extortion perpetuated upon me by such Outlaws) all "Form 1040 Income Tax Returns," "Form W-4 Employees Withholding Allowance Certificates," and other I.R.S. forms, documents, and schedules ever signed and/or submitted by or for me, and all alleged *power of attorney (agency)* represented thereby and/or acknowledged by me thereafter.

After receiving the Altered Forms and the Revocations, the IRS responded by sending the June 1995 Letter, which informed the Brumbaughs that their 1994 return had been deemed frivolous. Although the June 1995 Letter offered the Brumbaughs the option of amending the Altered Forms without penalty, they did not avail themselves of this opportunity or otherwise respond to the IRS. IRS Agent Riggs subsequently sent the Brumbaughs the August 1996 Letter, advising them that their 1993 return had been assigned to her for examination. In response, Mark Brumbaugh sent the Response Letter, in which he reiterated the Debtors' position that they are not subject to income taxation. The Response Letter states, in part, as follows:

If in the future, you furnish me with the law or regulation that makes me liable for Form 1040 tax, I will reconsider a[sic] audit. Until that time the audit is cancelled.

You have thirty days in which to furnish me with the above law and regulation. If you fail to do so it will be considered that none exists.[3]

Ms. Riggs subsequently sent the Brumbaughs the November 1996 Letter, which stated:

Based upon the fact that no information has been provided by you to explain various items reported on your return, I have no alternative but to issue a report based upon current information available.

Enclosed is Form 4549–Income Tax Examination Changes related to the 1993 and 1994 tax returns. Review the report. If you are in agreement with the changes, please execute the report with your and your spouse's signature.

*See* Debtors' Exhibit 3. The Brumbaughs did not respond to the November 1996 Letter or execute the enclosed Form 4549. The Brumbaughs also failed to respond to the Notice of Deficiency from the IRS dated September 24, 1997, which advised them that they owed additional taxes, interest and penalties for the 1993 and 1994 tax years and set forth the amount of the proposed assessments. Nor did the Brumbaughs consent to the amount of the proposed assessments by executing the Waiver.

The evidentiary record does not reflect any additional communication between the Brumbaughs and the IRS until November 3, 1998. On that date, a Notice of Federal Tax Lien was sent to the Brumbaughs. *See* Debtors' Exhibit 4.

**3.** Presumably, the "audit" referred to by Mr. Brumbaugh in his August 24, 1996 letter is

the examination of the Debtors' 1993 return by Ms. Riggs.

## III. *Arguments of the Parties*

The Brumbaughs assert that the Tax Debt is dischargeable because they filed returns on which the IRS assessed taxes, the returns were filed more than three years before the filing of the petition, and the Tax Debt was assessed more than 240 days prior to the petition date. *See* 11 U.S.C. § 523(a)(1).

According to the IRS, the Tax Debt is nondischargeable because the Altered Forms do not constitute "returns" under § 523(a)(1)(B). Alternatively, the IRS argues that even if the Altered Forms are deemed to be returns, the Brumbaughs' conduct—their filing of the Altered Forms and Revocations as well as their complete failure to cooperate with the IRS thereafter—represents a willful attempt to evade or defeat the Tax Debt within the meaning of § 523(a)(1)(C).

## IV. *Legal Analysis*

### A. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (made applicable in this adversary proceeding by Fed.R.Bankr.P. 7056). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 512 (6th Cir. 2000). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party satisfies its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *McKenzie*, 219 F.3d at 512. The nonmoving party may not meet this burden by resting on mere allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Mounts v. Grand Trunk W.R.R.*, 198 F.3d 578, 580 (6th Cir.2000). "Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact." *McKenzie*, 219 F.3d at 512 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Here, the Debtors and the IRS have filed cross-motions for summary judgment and agree that no genuine issue of material fact exists. "The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948). But "[a]t the same time, 'cross motions for summary judgment do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.' " *Greer v. United States*, 207 F.3d 322, 326 (6th Cir.2000) (quoting *Harrison W. Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir.1981)).

### B. *Exceptions to Discharge*

A Chapter 7 debtor generally is granted a discharge from all debts that arise before the filing of the bankruptcy petition. *See* 11 U.S.C. § 727(b). Certain debts are excepted from discharge by § 523 of the Code. *See* 11 U.S.C. § 523(a).

The IRS bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge under § 523(a) of the Code. *Meyers v. IRS (In re Meyers)*, 196 F.3d 622, 624 (6th Cir.1999) (citing *Grogan v. Garner*, 498 U.S. 279, 290–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Exceptions to discharge are narrowly construed in order to promote the central purpose of the discharge: relief for the "honest but unfortunate debtor." *Grogan*, 498 U.S. at 286–87, 111 S.Ct. 654 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

### C. *Dischargeability Under § 523(a)(1)(B)*

Section 523(a)(1)(B) provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

. . . .

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]

11 U.S.C. § 523(a)(1)(B). The IRS contends that the Altered Forms do not constitute returns for purposes of § 523(a)(1)(B).

The term "return" is not defined in § 523(a)(1)(B) or elsewhere in the Code. When faced with the threshold question of what constitutes a return under § 523(a)(1)(B), "it is appropriate to look to the Internal Revenue Code to determine

the proper definition of return.... [Because] [t]he Bankruptcy Code simply adopts the term 'return' without defining it further, ... there is no reason to presume the Bankruptcy Code sought to encompass as a return any document, form, paper, or the like that would not qualify as a return under the applicable tax law." *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1032–33 (6th Cir.1999), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999) (footnote omitted).

The Internal Revenue Code ("IRC") does not provide a statutory definition of the term "return." Section 6011(a) of the IRC sets forth the requirement that any person liable for a tax imposed thereunder "shall make a return or statement according to the forms and regulations prescribed by the Secretary. Every person required to make a return or statement shall include therein the information required by such forms or regulations." 26 U.S.C. § 6011(a). The Supreme Court has explained the rationale behind § 6011(a)'s requirement that taxpayers use standardized forms in making their returns:

> Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply. It thus implements the system of self assessment which is so largely the basis of our American scheme of income taxation. The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness and arrangement that the physical task of handling and verifying returns may be readily accomplished.

*Commissioner v. Lane–Wells Co.*, 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944).

■ In *Beard v. Commissioner*, 82 T.C. 766, 1984 WL 15573 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986), the United States Tax Court developed a four-part test to determine whether a document submitted to the IRS constitutes a return. This test is derived from two United States Supreme Court cases: *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). Under *Beard*, to qualify as a return the document in question must: (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. In *Hindenlang*, the Sixth Circuit adopted this four-prong test. 164 F.3d at 1033. The *Beard* test also has been adopted by a number of bankruptcy courts, and others, in the context of § 523(a)(1)(B) dischargeability litigation. *See, e.g., United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060 (9th Cir. 2000); *Hetzler v. United States (In re Hetzler)*, 262 B.R. 47, 50–51 (Bankr.D.N.J. 2001); *Mulcahy v. United States (In re Mulcahy)*, 260 B.R. 612, 615 (Bankr. D.Mass.2001); *In re Pierchoski*, 243 B.R. 639, 642 (W.D.Pa.1999); *Billman v. IRS (In re Billman)*, 221 B.R. 281, 282 (Bankr. S.D.Fla.1998).

According to the Brumbaughs, the Altered Forms satisfy each element of *Beard's* four-part test: the documents submitted were on the official Form 1040; they contained a jurat; they contained figures upon which the IRS could compute the amount of tax due; and, even if their returns were deemed frivolous by the IRS, they were filed "in a reasonable manner in light of [the Debtors'] views regarding the IRS." Debtors' Response to Motion for Summary Judgment ("Debtors Response") at 4. The IRS counters that, because the Debtors made significant alterations to the Form 1040s and submitted the Revocations therewith, their filings should not be deemed to be returns for purposes of § 523(a)(1)(B). The Court agrees. Appli-

cation of the *Beard* test compels the conclusion that the Altered Forms do not constitute returns within the meaning of § 523(a)(1)(B).

The *Beard* court noted that an altered form filed with the IRS "purports" to be a return if the form "convey[s], impl[ies] or profess[es] outwardly to be a return." *Beard*, 82 T.C. at 778. Under this standard, the filings made by the Brumbaughs profess outwardly to be returns and, thus, meet the first element of the *Beard* test.

■ The second prong of the *Beard* test requires that a filing with the IRS be executed under penalty of perjury. *Id.; Hindenlang*, 164 F.3d at 1033. The IRC requires execution of an unqualified jurat, or declaration. *See* 26 U.S.C. § 6065. Unsworn tax returns fail to satisfy the requirements of law, *see Mosher v. IRS*, 775 F.2d 1292, 1295 (5th Cir.1985), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1645, 90 L.Ed.2d 189 (1986), and are not considered tax returns under the IRC, *see United States v. Moore*, 627 F.2d 830, 834 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981).

The IRS contends that the Altered Forms were not executed under penalty of perjury because the Brumbaughs modified the jurat. The IRS relies on an unreported Sixth Circuit decision in *Parkinson v. Sec'y of Treasury*, No. 85–3481, 1986 WL 17508 (6th Cir. August 12, 1986). There, the Sixth Circuit upheld the district court's imposition of a civil penalty against the taxpayer under IRC § 6702, affirming the court's determination that, because the taxpayer had altered the jurat on his return, he had not filed a return executed under penalty of perjury. Unlike the tax-

payer in *Parkinson*, who had totally obliterated the jurat, the Brumbaughs made only a slight, non-substantive alteration of the jurat's wording. The Court need not determine whether this minor change to the wording of the jurat causes the Altered Forms to fail the second prong of the *Beard* test.[4] For it is clear that the Altered Forms fail to satisfy the final two elements of the *Beard* test; hence, they do not constitute returns for purposes of § 523(a)(1)(B).

In *Beard*, the Tax Court dealt with the question of whether a Form 1040 modified in much the same way as the Altered Forms constituted a "return." Concluding that the modified Form 1040 was not a return within the meaning of IRC § 6011, the Tax Court reasoned:

> The Internal Revenue Service has been forced to develop special procedures to handle tampered forms like those in the group referred to above. The tampered forms are also referred to as "Eisner v. Macomber returns" because *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920), is usually cited either in the form or in the literature attached. From a cursory look, they appear to be official Forms 1040 but upon closer inspection definitively are not. Internal Revenue Service employees must identify and then withdraw these from the normal processing channels, and gather and deliver them to a special team for review. After such review, the person who submitted such a tampered return is often but not always informed that it is not acceptable as a return because it does not comply with the Internal Revenue Code.

---

**4.** Nor need the Court determine the legal effect, if any, of the Debtors' purported "revocation" of the Altered Forms. "Revocation" of previously filed Form 1040s apparently is a ploy commonly utilized by tax protesters. *See, e.g., United States v. Sather*, 3 Fed.Appx.

725, 726 (10th Cir.2001), *cert. denied*, —— U.S. ——, 121 S.Ct. 1669, 149 L.Ed.2d 649 (2001); *United States v. Clark*, 139 F.3d 485, 487 (5th Cir.1998), *cert. denied*, 525 U.S. 899, 119 S.Ct. 227, 142 L.Ed.2d 187 (1998).

. . . .

Petitioner's prohibited tampering with the official form, the net effect of which is the creation of a zero tax liability, adversely affects the form's useability by respondent. The tampered form, because of these numerous irregularities, must be handled by special procedures and must be withdrawn from normal processing channels. There can be no doubt that due to its lack of conformity to the official form, it substantially impedes the Commissioner's physical task of handling and verifying tax returns. Under the facts of this case, taxpayer has not made a return according to the forms and regulations prescribed by the Secretary as required by section 6011(a). The rejection of the tampered form was authorized by the regulations for failure to conform to the revenue procedure. But whether or not rejected in this case, the question remains—is the Internal Revenue Service nevertheless required to accept and treat as a tax return this tampered form? We conclude that it is not.

. . . .

The tampered form ... does not reflect an endeavor to satisfy the law. It in fact makes a mockery of the requirements for a tax return, both as to form and content. Whether or not the form contains sufficient information to permit a tax to be calculated is not altogether clear. We have held that the attachment of a Form W–2 does not substitute for the disclosure on the return itself of information as to income, deductions, credits and tax liability. Ignoring the Form W–2, the tampered form does show an amount of "Wages, salaries, tips, etc.," but with the margin description altered from "Income" to "Receipts." Similarly, in place of a deduction, the form has an amount for "Nontaxable receipts." *Thus, to compute a tax from this tampered form, one must effectively ignore the margin and line descriptions, imagining instead the correct ones from an official Form 1040 or one must simply select from the form, including the Form W–2, that information which appears to be applicable and correct, and from the information so selected, irrespective of its label, compute a tax.* We do not believe such an exercise is what the United States Supreme Court had in mind in *Commissioner v. Lane–Wells Co., supra* at 222–223, 64 S.Ct. 511, and *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 309, 60 S.Ct. 566, 84 L.Ed. 770 (1940).

*Beard,* 82 T.C. 766 at 771, 776–77, 778–79, 1984 WL 15573 (emphasis added) (citations omitted). *See also Counts v. Commissioner,* 774 F.2d 426, 427 (11th Cir.1985) (noting that altered Form 1040 "was not a standard return, but rather was an attempt to circumvent the payment of taxes" and holding that the "Tax Court was correct to determine that it was not a return as contemplated by 26 U.S.C. § 6011(a)").

Like the taxpayer in *Beard,* the Brumbaughs failed to provide the IRS with the information necessary to compute their tax liability. As in *Beard,* the IRS could compute the Debtors' tax liability from the Altered Forms only by "effectively ignor[ing] the margin and line descriptions, imagining instead the correct ones from an official Form 1040 or ... select[ing] from the form ... that information which appears to be applicable and correct ... irrespective of its label." *Beard,* 82 T.C. at 779. Thus, the Altered Forms do not satisfy the third prong of the *Beard* test. *See In re Thompson,* 207 B.R. 7, 11 (Bankr.M.D.Fla.1996) (holding that Form 1040 filed by tax protester, who listed income as zero and stamped W–2 Forms "incorrect," failed to provide the IRS with all information necessary to compute tax due and "was not a tax return for purposes

of section 523(a)(1)(B)"); *Slater v. United States (In re Slater)*, 96 B.R. 867, 868 (Bankr.C.D.Ill.1989) ("The protest returns filed by the Debtor prior to the two year period immediately preceding his bankruptcy do not constitute lawful income tax returns [under § 523(a)(1)(B)].").

Nor have the Debtors made an honest and reasonable attempt to satisfy the requirements of the tax law. By filing the Altered Forms and failing to cooperate with the IRS after the documents were filed, the Brumbaughs attempted to avoid rather than satisfy the requirements of the tax law. *United States v. Moore*, 627 F.2d at 835 ("In the tax protestor cases, it is obvious that there is no 'honest and genuine' attempt to meet the requirements of the code. In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information."); *Beard*, 82 T.C. at 779 ("The tampered form here is a conspicuous protest against the payment of tax, intended to deceive respondent's return-processing personnel into refunding the withheld tax.... The critical requirement that there must be an honest and reasonable attempt to satisfy the requirements of Federal income tax law clearly is not met.").

In sum, the Altered Forms do not meet at least two of the four prongs of the *Beard* test. The Altered Forms neither contain sufficient data to allow calculation of tax nor represent an honest and reasonable attempt by the Brumbaughs to satisfy the requirements of tax law. Because they fail to satisfy these requirements, the Altered Forms do not constitute returns for purposes of § 523(a)(1)(B). Thus, the Tax Debt is excepted from discharge by § 523(a)(1)(B).

## D. *Dischargeability Under § 523(a)(1)(C)*

Section 523(a)(1)(C) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(1) for a tax or a customs duty—

. . . .

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

11 U.S.C. § 523(a)(1)(C). Section 523(a)(1)(C) "forbids discharge when the debtor has acted fraudulently or in a manner calculated to evade or defeat a tax. This corresponds with the notion that 'good faith and candor are necessary prerequisites to obtaining a fresh start.'" *Hindenlang*, 164 F.3d at 1032 (quoting *Industrial Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir.1991)). Here, the IRS contends that the Brumbaughs, by filing the Altered Forms and subsequently failing to cooperate with the IRS, willfully attempted to evade or defeat the Tax Debt within the meaning of § 523(a)(1)(C).

The Sixth Circuit has determined that the phrase "willfully attempted in any manner to evade or defeat such tax" contained in § 523(a)(1)(C) is "consistent with the definition found in other civil tax cases, which equates 'willful' with voluntary, conscious, and intentional evasions of tax liabilities." *Toti v. United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir.), *cert. denied*, 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994) (citing *Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988); *Domanus v. United States*, 961 F.2d 1323, 1326 (7th Cir.1992)). Applying this standard, the Sixth Circuit held that "a plain reading of § 523(a)(1)(C) includes both acts of commission and acts of omission."

*Id.* Because Toti "had the wherewithal to file his return and pay his taxes, but he did not fulfill his obligation ... [and those omissions were] voluntar[y], conscious[ ], and intentional[ ]," the Sixth Circuit concluded that Toti's tax obligations were nondischargeable under § 523(a)(1)(C). *Id.*

In a subsequent unpublished decision, the Sixth Circuit, citing *Toti,* found that the phrase "in any manner" is "broad enough to encompass attempts to thwart payment of taxes." *United States v. Sumpter (In re Sumpter),* Nos. 94–1439 & 94–1440, 1995 WL 501947, at *3 (6th Cir. August 22, 1995), *cert. denied,* 517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777 (1996). Recently, the Eleventh Circuit, following *Toti* and the Third Circuit's decision in *United States v. Fegeley (In re Fegeley),* 118 F.3d 979 (3d Cir.1997), held that the modifying phrase "in any manner" contained in § 523(a)(1)(C) "means what it says and covers attempts to evade or defeat a tax whether accomplished by acts of 'culpable omission [or] acts of commission.'" *United States v. Fretz (In re Fretz),* 244 F.3d 1323, 1329 (11th Cir.2001) (quoting *Fegeley,* 118 F.3d at 983). The Eleventh Circuit determined that a debtor whose misconduct was limited to failing to file tax returns and pay his taxes willfully attempted to evade or defeat his tax liability within the meaning of § 523(a)(1)(C). *Id.* at 1330 ("[Debtor's] failure to file tax returns, coupled with his failure to pay his taxes, satisfy the conduct requirement of § 523(a)(1)(C).").

█ Section 523(a)(1)(C) precedent thus clearly establishes that a debtor's failure to file tax returns and pay taxes—without any other affirmative act of evasion—can meet the conduct requirement of § 523(a)(1)(C) and support a finding of nondischargeability. *See Fretz,* 244 F.3d at 1330; *Fegeley,* 118 F.3d at 984; *Toti,* 24 F.3d at 809. It stands to reason, then, that the type of tax-protest activity engaged in by the Brumbaughs here—which goes beyond mere non-filing of returns and nonpayment of taxes—satisfies § 523(a)(1)(C)'s conduct standard. To be sure, the Brumbaughs' conduct constitutes an "attempt[ ] to thwart payment of taxes." *Sumpter,* 1995 WL 501947 at *3. *See Wilbert v. IRS (In re Wilbert),* 262 B.R. 571, 577 (Bankr.N.D.Ga.2001) ("[Tax protester debtor] did much more than simply fail to timely file returns and pay taxes. . . . Rather than cooperating with the IRS, [debtor] chose to write letters accusing the agency of trampling his constitutional rights, illegal behavior, harassment, slander and 'terroristic extortion.' . . . [T]he Court has little difficulty concluding that [the debtor], through both his acts and omissions, intended to evade or defeat his tax liability."); *Spirito v. United States (In re Spirito),* 198 B.R. 624, 629 (Bankr.M.D.Fla.1996) (excepting tax protester debtors' tax debt from discharge under § 523(a)(1)(C) because their conduct involved "more than merely fail[ing] to pay taxes that they knew were due and owing. . . ." [debtors also] "knowingly sent false and frivolous correspondence to the IRS contending that they did not have a duty to pay their ... income tax liabilities"); *Laurin v. United States (In re Laurin),* 161 B.R. 73, 75 (Bankr.D.Wyo. 1993) (holding nondischargeable the tax obligations of debtor who turned to "the tax protesters for the purpose of figuring out how he could evade the taxes" and attempted to "avoid his known duty to file and pay by simply sending ... the IRS various materials prepared by a tax protester organization").

Here, the Brumbaughs' undertook a course of conduct similar to that engaged in by the tax protesters in the cases cited above. The Brumbaughs filed the Altered Forms and Revocations with the IRS, espousing the position that they had no duty to pay income taxes. Thereafter, they re-

fused to cooperate with the IRS: the Brumbaughs ignored the June 1995 Letter (which afforded them the opportunity to amend the Altered Forms without penalty), they responded to the August 1996 Letter by again asserting that they were not subject to income taxation, they failed to respond to the November 1996 Letter or execute the enclosed Form 4549, and they neither responded to the September 24, 1997 Notice of Deficiency nor executed the accompanying Waiver. The Court concludes that by these acts and omissions, the Brumbaughs willfully attempted to evade or defeat their income tax obligations. The Tax Debt is therefore nondischargeable under § 523(a)(1)(C).

### V. *Conclusion*

For the reasons stated above, the United States' Motion for Summary Judgment (Doc. 21–1) is GRANTED and the Debtors' Motion for Summary Judgment (Doc. 20–1) is DENIED. A judgment declaring the Tax Debt to be nondischargeable will be entered separately.

**IT IS SO ORDERED.**