

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-13-2002

# Dookeran v. Mercy Hosp Pgh

Precedential or Non-Precedential:

Docket 1-1246

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

### Recommended Citation

"Dookeran v. Mercy Hosp Pgh" (2002). *2002 Decisions.* Paper 117.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 13, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1246

KEITH A. DOOKERAN, M.D.

v.

MERCY HOSPITAL OF PITTSBURGH; ROBERT HILBERG,
M.D.; THOMAS MATTEI, M.D.; CHARLES COPELAND,
M.D.; PREMELA RAJAKUMAR, PH.D.; SUSAN HECK;
ROBERT MARTINI; PITTSBURGH MERCY HEALTH
SYSTEM; KATHERINE EBEL; RONALD BORON, M.D.

(W.D. D.C. 99-cv-00134)

CATHOLIC HEALTHCARE EAST;
GREATER PITTSBURGH SURGICAL ASSOCIATES

        (W.D. D.C. 99-cv-00800)

        Keith A. Dookeran,
        Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. Nos. 99-cv-00134, 99-cv-00800)
District Judge: The Honorable Donetta W. Ambrose

Argued November 1, 2001

BEFORE: SLOVITER, NYGAARD, and CUDAHY,*
Circuit Judges.

(Filed: February 13, 2002)
_____

* Honorable Richard D. Cudahy, Circuit Judge for the United States
Court of Appeals for the Seventh Circuit, sitting by designation.

Harlan S. Stone, Esq. (Argued)
Stone & Stone
437 Grant Street
828 Frick Building
Pittsburgh, PA 15219

 Counsel for Appellant

W. Thomas McGough, Jr., Esq.
 (Argued)
Jack B. Cobetto, Esq.
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

 Counsel for Appellees

OPINION OF THE COURT

NYGAARD, Circuit Judge.

The issue on appeal is whether the "whistleblower" provision of the False Claims Act, 31 U.S.C. S 3730(h), protects an employee who exposes allegedly false statements made in an application which contains no demand for payment of federal funds. Appellant, Dr. Keith A. Dookeran, filed a Complaint asserting seven causes of action against Appellees. Count I is a claim for retaliatory discharge under the whistleblower provision of the False Claims Act ("FCA"), 31 U.S.C. S 3730(h). Counts II through VII are state law claims arising out of the same facts. The District Court granted summary judgment in favor of Appellees, dismissing Count I because it concluded that Dookeran was not engaged in protected conduct under the FCA, and then declined to exercise supplemental jurisdiction over the pendant state law claims. We hold that the whistleblower protections apply only to actions taken in furtherance of a viable False Claims Act case which has been, or is about to be, filed. Because the facts of this case could not possibly support a False Claims Act case, the whistleblower provisions did not apply. We will affirm.

2

I.

Dookeran was the Director of Clinical Oncology Trials and Research for Mercy Cancer Institute ("MCI"), which is part of The Mercy Hospital of Pittsburgh ("Mercy"). Dr. Howard Zaren, the Director of MCI, asked Dookeran to author a grant application for MCI to be designated as a clinical center for the National Surgical Adjuvant Breast and Bowel Project's ("NSABP") study comparing the effectiveness of tamoxifen and roloxifene in reducing the incidence of breast cancer in post-menopausal women. This study is known as the STAR P-2 Study. Dookeran prepared the application for the STAR P-2 Study. Because of Mercy's alleged failure to commit appropriate resources to ensure the safety of patients, however, Dr. Zaren refused to submit the STAR P-2 application. Dookeran was directed by Dr. Thomas Mattei, Dr. Charles Copeland, and Ms. Susan Heck to submit the STAR P-2 application. Dookeran refused to submit the application for the same reasons as Dr. Zaren and because Dr. Zaren's continued role as the Principal Investigator and Director of MCI was in doubt. While Dookeran was on vacation, Mercy representatives obtained the STAR P-2 application, replaced Dookeran's and Dr. Zaren's names with the name of Dr. Hilberg, and submitted the application. Upon his return, Dookeran raised charges of scientific misconduct, arguing that the application was false and misleading and that his intellectual property had been wrongfully appropriated. Appellees allegedly ignored these charges and proceeded to retaliate against Dookeran for his allegations.

II.

Dookeran alleges that he faced retaliatory action in violation of the "whistleblower" provision of the FCA, 31 U.S.C. S 3730(h). That section provides, in part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section,

3

including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

Id. We recently had the opportunity to articulate in Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176 (3d Cir. 2001), the elements of a cause of action under S 3730(h):

> A plaintiff asserting a cause of action under S 3730(h) must show (1) he engaged in "protected conduct," (i.e., acts done in furtherance of an action under S 3730) and (2) that he was discriminated against because of his "protected conduct." In proving that he was discriminated against "because of " conduct in furtherance of a False Claims Act suit, a plaintiff must show that (1) his employer had knowledge he was engaged in "protected conduct"; and (2) that his employer's retaliation was motivated, at least in part, by the employee's engaging in "protected conduct." At that point, the burden shifts to the employer to prove the employee would have been terminated even if he had not engaged in the protected conduct.

Hutchins, 253 F.3d at 186 (internal citations omitted). Thus, the first thing Dookeran must show is that he was engaged in "protected conduct."

We explained in Hutchins that for conduct to be protected, the language of S 3730(h) requires that the conduct be taken "in furtherance of " a False Claims Act action:

> In addressing what activities constitute "protected conduct," the "case law indicates that `protected [conduct]' requires a nexus with the in furtherance of `prong of [a False Claims Act] action.' " This inquiry involves determining "whether [plaintiff 's] actions sufficiently furthered `an action filed or to be filed under' the [False Claims Act] and, thus, equate to `protected [conduct].' "

Hutchins, 253 F.3d at 187 (internal citations omitted). Since conduct is protected if taken in furtherance of an action

4

"filed or to be filed," we have noted that "employees need not actually file a False Claims Act suit to assert a cause of action under S 3730." Id. at 188. Nor do we require that an employee has developed a winning FCA case to be afforded whistleblower protection. Id. at 187. But courts do require that there at least be a distinct possibility that a viable FCA action could be filed. See Hutchins, 253 F.3d at 188; McKenzie v. BellSouth Telecomm., Inc., 219 F.3d 508, 516 (6th Cir. 2000); Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 867 (4th Cir. 1999); United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 741 (D.C. Cir. 1998); United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996); Childree v. UAP/GA AG Chem., Inc., 92 F.3d 1140, 1146 (11th Cir. 1996). Thus, to survive summary judgment, Dookeran must show there is a genuine issue that his activities could reasonably lead to a viable FCA case. See McKenzie, 219 F.3d at 516. If there is no way that Dookeran's conduct of informing Mercy administrators about the allegedly fraudulent application could reasonably lead to a viable FCA action, then the whistleblower provision provides him no protection.

This is where Dookeran's case fails. As the District Court explained, there was no possibility that Dookeran could have filed a viable FCA action because the statutory elements of 31 U.S.C. S 3729 could not be met. Specifically, no "claim" had, or could have, been made upon the government.

The False Claims Act provides:

> Any person who--
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
> . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than

5

> $10,000, plus 3 times the amount of damages which
> the Government sustains because of the act of that
> person . . . .

31 U.S.C. S 3729(a).

"Claim" is defined by the Act as:

> any request or demand, whether under a contract or
> otherwise, for money or property which is made to a
> contractor, grantee, or other recipient if the United
> States Government provides any portion of the money
> or property which is requested or demanded, or if the
> Government will reimburse such contractor, grantee, or
> other recipient for any portion of the money or property
> which is requested or demanded.

31 U.S.C. S 3729(c).

Thus, for Dookeran to show that he was engaged in "protected conduct," he must demonstrate that the application that he refused to sign was a "claim," meaning that it was a "request or demand . . . for money or property." Appellees offer substantial evidence and argument that the application at issue was not a request or demand for money. Dookeran offers no evidence to the contrary.

Specifically, the application was a request that Mercy be designated a clinical center for the NSABP STAR P-2 study. It was not a request or demand for federal funds. Even if the application had been accepted (which it was not), no money, either federal or private, would have been paid to Mercy. The application was simply the first step in a process that ultimately might have led, but in actuality did not lead, to the authorization of the payment of federal funds to Mercy. That does not make it a "claim" under the FCA. Moreover, the uncontradicted affidavit of Joan Goldberg, the Chief Executive Officer of the NSABP, states:

> The STAR P-2 application submitted by Mercy Hospital
> was not itself an application for a grant of federal
> funds. Rather, the application was a request by Mercy
> Hospital to become a designated center for a specific
> NSABP clinical trial for an approved protocol.

6

Clearly, the application was not a "request or demand . . . for money or property" as is required to be a"claim" under the FCA. Because the application was not a "claim," there was no possibility that Dookeran could have filed a viable FCA action. Thus, his activity could not have been taken "in furtherance of " an FCA action, as is required to constitute "protected activity" under the whistleblower section of the FCA.

III.

In sum, and for the above reasons, we will affirm the summary judgment for the Appellees.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit