In re INTERNATIONAL DIAMOND
EXCHANGE JEWELERS, INC.
dba Diamond Showcase.

David M. WHITTAKER, Chapter 11 Plan
Trustee for the Bankruptcy Estate of
International Diamond Exchange Jewel-
ers, Inc., dba Diamond Showcase, Plain-
tiff,

v.

CITRA TRADING CORPORATION,
Defendant.

Bankruptcy No. 3–92–00150.
Adv. No. 94–052.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Jan. 19, 1995.

Deborah P. Ecker, Columbus, OH, for plaintiff.

Charles W. Ewing, Hilliard, OH, for defendant.

## DECISION ON ORDER GRANTING MOTION OF CHAPTER 11 PLAN TRUSTEE FOR SUMMARY JUDGMENT AS TO ISSUES PERTAINING TO 11 U.S.C. § 547(b) (Doc. 15–1)

THOMAS F. WALDRON, Bankruptcy Judge.

### JURISDICTIONAL STATEMENT

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F)—proceedings to determine, avoid, or recover preferences.

Pending before the court is a Motion Of Chapter 11 Plan Trustee For Summary Judgment As To Issues Pertaining To 11 U.S.C. § 547(b) (Doc. 15–1) filed by the Chapter 11 Plan Trustee, David M. Whittaker (the "Trustee"), for International Diamond Exchange Jewelers, Inc. (the "debtor"). In response, Citra Trading Corporation ("Citra") filed Defendant, Citra Trading Corp.'s, Memorandum Contra Motion For Summary Judgment (Doc. 17–1). In this response, Citra asserts that the Trustee has failed to establish all the elements necessary to constitute an avoidable preference, specifically those elements set forth under § 547(b)(3) and (b)(5). Citra has not asserted any defenses under § 547(c).

### FACTS

Based upon the affidavit of Nancy Thruston, Secretary of International Diamond Exchange Jewelers, Inc., (Doc. 15–1, Ex. B), the affidavit of Alan C. Duvall, the Managing Partner of Duvall & Associates, Inc., Certified Public Accountants (Doc. 15–1, Ex. D), the affidavit of David M. Whittaker, the Trustee (Doc. 15–1, Ex. F), and the exhibits attached to the Trustee's motion for summary judgment (Doc. 15–1), the court makes the following findings of fact:

1. The records of the debtor pertaining to invoices from creditors and payments to creditors were kept and made contemporaneously with the transactions between the debtor and its creditors. (Doc. 15–1, Ex. B).

2. Debtor's check, number 1212, dated November 8, 1991, in the amount of $1,000 was paid to the order of Citra and was honored by the bank on November 12, 1991. This check was a payment on the account owing from the debtor to Citra as set forth on Citra's billing statement dated October 4, 1991. (Doc. 15–1, Ex. B).

3. Debtor's check, number 1213, dated November 15, 1991, in the amount of $1,000 was paid to the order of Citra and was honored by the bank on November 18, 1991. This check was a payment on the account owing from the debtor to Citra as set forth on Citra's billing statement dated October 4, 1991. (Doc. 15–1, Ex. B).

4. Debtor's check, number 1214, dated November 22, 1991, in the amount of $1,000 was paid to the order of Citra and was honored by the bank on November 25, 1991. This check was a payment on the account owing from the debtor to Citra as set forth on Citra's billing statement dated October 4, 1991. (Doc. 15–1, Ex. B).

5. Debtor's check, number 1215, dated November 29, 1991, in the amount of $1,000 was paid to the order of Citra and was honored by the bank on December 2, 1991. This check was a payment on the account owing from the debtor to Citra as set forth on Citra's billing statement dated October 4, 1991. (Doc. 15–1, Ex. B).

6. Debtor's check, number 1216, dated December 6, 1991, in the amount of $1,000 was paid to the order of Citra and was honored by the bank on December 9, 1991. This check was a payment on the account owing from the debtor to Citra as set forth on Citra's billing statement dated October 4, 1991. (Doc. 15–1, Ex. B).

7. Debtor's check, number 1490, dated December 13, 1991, in the amount of $5,000 was paid to the order of Citra and was honored by the bank on December 16, 1991. This check was a payment on the account owing from the debtor to Citra as set forth on Citra's billing statement dated October 4, 1991. (Doc. 15–1, Ex. B).

8. Debtor's check, number 1846, dated December 20, 1991, in the amount of $1,000 was paid to the order of Citra and was honored by the bank on December 23, 1991. This check was a payment on the account owing from the debtor to Citra as set forth on Citra's billing statement dated October 4, 1991. (Doc. 15–1, Ex. B).

9. On January 10, 1992, the debtor filed for bankruptcy relief under chapter 11.

10. A Consolidated Balance Sheet of the debtor, compiled in accordance with the standards established by the American Institute of Certified Public Accountants, was prepared by Duvall & Associates, Inc., Certified Public Accountants. (Doc. 15–1, Ex. D). This Consolidated Balance Sheet indicates that as of April 30, 1991, the liabilities of the debtor exceeded its assets. (Doc. 15–1, Ex. D).

11. At all times between April 30, 1991, when the debtor prepared its Consolidated Balance Sheet for the period ended April 30, 1991, and the date the debtor filed its chapter 11 petition, January 10, 1992, the debtor's total liabilities exceeded its total assets. (Doc. 15–1, Ex. B).

12. Liquidation of the debtor's assets in a chapter 7 would only pay an estimated twenty percent of the claims of unsecured creditors exclusive of preference recoveries. Based upon the statements set forth in the debtor's confirmed plan of reorganization, the Trustee has calculated a possible total distribution (including preference recoveries) of 44% to 62%. (Doc. 15–1, Ex. F).

13. On January 5, 1994, the Trustee filed an adversary complaint against several defendants, including Citra. This complaint alleged causes of action under 11 U.S.C. § 547 against each defendant. The court ordered the Trustee to assign a separate adversary file for each defendant. Each adversary, including this one, was assigned a separate number and filed *nunc pro tunc* on January 5, 1994.

14. Citra filed an answer (Doc. 3–1) and a supplemental answer (Doc. 13–1). Neither filing asserts any defenses to the Trustee's preference complaint, but merely denies or admits the Trustee's allegations.

15. On October 17, 1994, the Trustee filed his Motion Of Chapter 11 Plan Trustee For

Summary Judgment As To Issues Pertaining To 11 U.S.C. § 547(b) (Doc. 15–1) requesting that this court enter summary judgment in its favor pursuant to 11 U.S.C. § 547. On November 17, 1994, Citra filed Defendant, Citra Trading Corp.'s, Memorandum Contra Motion For Summary Judgment (Doc. 17–1). Citra disputes that the Trustee has established the elements of a preference. Citra has not raised any defenses.

## DISCUSSION

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure, and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Bankr.P. 7056(c). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The burden of demonstrating the existence of a genuine issue of material fact lies, however, with the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial."*

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

"The entry of summary judgment is always subject to the requirements of due process concerning notice and an opportunity to be heard, the opportunity for discovery and the exercise of the court's discretion concerning the full presentation of evidence." *Ledford v. Tiedge (In re Sams),* 106 B.R. 485, 491 (Bankr.S.D.Ohio 1989).

No genuine issues of material fact exist and the parties have had a full opportunity to be heard. Therefore, this proceeding is appropriate for summary judgment.

Section 547(b) of the Bankruptcy Code provides: Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Pursuant to § 547(g), the trustee has the burden of proving the avoidability of a transfer under subsection (b). 11 U.S.C. § 547(g). Each of the five elements must be established by a preponderance of the evidence. *Foreman Indus., Inc. v. Broadway Sand & Gravel (In re Foreman Indus., Inc.),* 59 B.R. 145, 147 (Bankr.S.D.Ohio 1986).

The undisputed facts demonstrate that payments were made by the debtor for the benefit of Citra in payment of antecedent debt. October 12, 1991, was the ninetieth day prior to the date the debtor filed for bankruptcy relief. *Subler Trucking, Inc. v. Kingsville–Ninety Auto/Truck Stop, Inc. (In re Subler Trucking, Inc.),* 122 B.R. 318, 321 (Bankr.S.D.Ohio 1990) (the 90–day preference period is computed by counting backwards from the date the petition is filed;

therefore, computation begins with the day before the filing date of the petition).

■ The debtor's checks to Citra were honored on the following dates: November 12, 1991, November 18, 1991, November 25, 1991, December 2, 1991, December 9, 1991, December 16, 1991, and December 23, 1991.[1] Therefore, all payments made by the debtor to Citra were within ninety days of the date the debtor filed for bankruptcy relief. Consequently, subsections (1), (2), and (4) of § 547(b) have been established by the Trustee.

■ Citra asserts that the Trustee has not established that the debtor was insolvent for purposes of § 547(b)(3). Citra disputes the calculations contained in the debtor's balance sheet. Specifically, Citra states that the "Loan Payable Stockholder should be included in shareholder equity in determining whether or not the company was solvent at the time of the transfers," that "net book value is an accounting fiction which does not under most circumstances equal the actual value of the assets," that "there is no asset valuation for the 'going-concern value' of the company," and that the "Accounts Payable Trade includes one and one-half to two percent service charges for past due accounts, a charge which if not in writing, is not a proper charge." (Doc. 17–1, p. 2).

Section 101(32)(a) defines insolvent as follows:

"Insolvent" means—

(A) with reference to an entity other than a partnership, and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title[.]

"Insolvency is essentially a balance sheet test—that is, a debtor is insolvent when the debtor's liabilities exceed the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemptions." *In re Taubman,* 160 B.R. 964, 979 (Bankr.S.D.Ohio 1993); *Foreman,* 59 B.R. at 149. For purposes of § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f).

■ Fed.R.Evid. 301[2] defines this presumption and requires the party against whom the presumption exists to come forward with evidence to rebut the presumption, although the burden of proof remains on the party in whose favor the presumption exists. *Akers v. Koubourlis (In re Koubourlis),* 869 F.2d 1319, 1322 (9th Cir.1989). Thus, in the absence of evidence to rebut the presumption, the Trustee is entitled to rely on the § 547(f) presumption to establish the debtor's insolvency. *Id.* Therefore, if Citra came forward with evidence to rebut or meet the presumption, the burden of persuasion then rests with the Trustee to establish insolvency. *Id.* Citra, however, must demonstrate evidence of the debtor's solvency. *Id.* "A speculative showing, such as simply questioning the debtor's accounting methods, is insufficient." *Id.; see also Foreman,* 59 B.R. at 149.

In this proceeding, Citra has merely questioned the debtor's accounting methods. It has not provided any evidence to meet or rebut the presumption of the debtor's insolvency. Therefore, Citra has not rebutted the presumption of insolvency, and the Trustee has sufficiently established insolvency for purposes of § 547(b)(3).

---

1. Under § 547(b), a transfer made by check occurs on the date the check is honored. *Barnhill v. Johnson,* 503 U.S. 393, ——, 112 S.Ct. 1386, 1388, 118 L.Ed.2d 39 (1992).

2. Federal Rule of Evidence 301 provides:
 In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the par-

ty against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

270

 Citra also disputes that the Trustee has established the requirements under subsection (b)(5) because "[t]he checks in question were made as replacement checks for previously dishonored checks given" to Citra. (Doc. 17–1, p. 1). Section 547(b)(5) permits avoidance by a trustee of a transfer that enables a creditor to receive more than it would receive if the case were a chapter 7 case and the transfer had not been made. This provision requires the bankruptcy court to "construct a 'hypothetical chapter 7 case;' i.e., to determine what the creditor would have received in a liquidation." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 464 (6th Cir. 1991). Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have received under a chapter 7 liquidation. *Id.* at 465. Thus, the court must undertake a two-part test. First, the court must determine what the creditor receives if the transfer is not avoided. Second, the court must determine what the creditor would have received in a liquidation case if the transfer had not been made.

Citra filed a proof of claim in the unsecured amount of $33,583.25.[3] The undisputed facts establish that Citra received $11,000 within the preference period. Liquidation of the debtor's assets in a chapter 7 would only pay an estimated twenty percent of the claims of unsecured creditors exclusive of preference recoveries. Thus, if the transfers are not avoided Citra would receive $11,000 plus 20% of $33,583.25 (or $6,716.65). If the transfer had not occurred Citra would only receive 20% of $33,583.25, or $6716.65. Therefore, Citra has received more than if the case were a case under chapter 7 of this title; the transfer had not been made; and such creditor received payment of such debt to the extent provided by the provision of this title. Consequently, the Trustee has sufficiently established that the requirements for subsection § 547(b)(5).

Based upon the foregoing, the court concludes that the Trustee has established all the elements under § 547(b) to establish a preference.

 Significantly, despite being afforded several opportunities, Citra has failed to set forth any defense to the Trustee's complaint under § 547(c). As previously stated, Citra failed to raise any defense in its answer or in its supplemental answer (Doc. 13–1). Furthermore, Citra did not assert any defense in its response to the Trustee's motion for summary judgment nor did it file any motion seeking additional opportunities to file any defenses. Notably, an order was previously entered, whereby the court stated:

> The court does not intend to grant any party a further period in which to file any response, nor does the court intend to grant any party an opportunity to be heard in oral argument; however, any party is free to file a motion seeking such additional opportunities, provided the motion is filed at the time of the filing of the original motion for summary judgment or the response to the motion for summary judgment.

(Doc. 8–1). Consequently, because Citra failed to raise any defense to the Trustee's preference action and because Citra failed to file a motion seeking additional opportunities to assert a defense, Citra is precluded from raising any defenses at this time.

Accordingly, the Motion Of Chapter 11 Plan Trustee For Summary Judgment As To Issues Pertaining To 11 U.S.C. § 547(b) (Doc. 15–1) is **GRANTED.** Judgment is granted in favor of International Diamond Exchange Jewelers, Inc. in the amount of $11,000 plus interest, pursuant to 28 U.S.C. § 1961(a) from the date of this complaint, January 5, 1994,[4] and the costs of this proceeding.

**SO ORDERED.**

---

3. Proof of claim number 13 filed on January 13, 1992.

4. *See Foreman Indus.*, 59 B.R. at 154–57.