In re SPINNAKER INDUSTRIES,
INC., Debtor.

SKK Liquidation Trust, Plaintiff,

v.

Green & Green, LPA, Defendant.

Bankruptcy No. 03–67707.
Adversary No. 03–2545.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

May 20, 2005.

757

758

Jeffrey Mark Levinson, Pepper Pike, OH, for Plaintiff.

Stephen D. Brandt, Dayton, OH, for Defendant.

## MEMORANDUM OPINION

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

Before filing its voluntary Chapter 11 petition, Spinnaker Coating, Inc. ("Spinnaker Coating" or "Debtor") made a $100,000 payment ("Transfer" or "First Payment") to partially fund the settlement of a personal injury claim asserted by Thomas R. Bricker ("Bricker"), a former Spinnaker Coating employee. The Transfer was in the form of a check made jointly payable to Bricker and his legal counsel, the law firm of Green & Green, LPA ("Green & Green"). The issues before the Court in this adversary proceeding are (1) whether the First Payment is avoidable as a preference under 11 U.S.C. § 547(b) and, if so, (2) whether that portion of the First Payment Green & Green subsequently received from Bricker in satisfaction of its attorneys' fees and expenses ("Second Transfer") is recoverable from the law firm under 11 U.S.C. § 550(a). These issues come before the Court on the Motion for Judgment on the Pleadings and for Summary and Final Judgment ("Motion") (Doc. 19) filed by Green & Green. The Motion seeks summary judgment on the Complaint to Avoid Preferential Transfers and to Recover Property Pursuant to 11 U.S.C. §§ 547 and 550 ("Complaint") (Doc. 1) filed by SKK Liquidation Trust ("Liquidation Trust"), the successor to Spinnaker Coating. For the reasons explained below, the Court concludes that the Transfer is avoidable under § 547(b) of the Bankruptcy Code. The Court also finds that, because Green & Green did not have dominion and control over the settlement proceeds, the firm is not an initial transferee subject to liability under § 550(a)(1) of the Bankruptcy Code. The Court is unable to determine as a matter of law whether the Second Transfer is recoverable under § 550(a)(2) of the Code. While Green & Green is an immediate or mediate transferee of Spinnaker Coating, the parties have failed to address the issue of whether the law firm took the Second Transfer for value, in good faith and without knowledge of its voidability. Thus, the issue of whether Green & Green is protected by § 550(b)(1)'s good-faith-transferee defense must await further proceedings in this case.

### II. Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### III. Procedural Background

On November 13, 2001 ("Petition Date"), Spinnaker Industries, Inc. and its wholly owned subsidiaries, Spinnaker Coating, Spinnaker Coating–Maine, Inc. and Entoleter, Inc. (collectively, "Debtors"), each filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The Debtors' cases were jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. On April 10, 2003, the Court entered an order confirming the Debtors' liquidating plan ("Plan"). Under the Plan, the Liquidation Trust was established to, among other things, prosecute avoidance actions.

On November 10, 2003, the Liquidation Trust filed the Complaint. At a pre-trial conference conducted on May 3, 2004, counsel for Green & Green advised the Court that it intended to file a dispositive motion. The Court established a briefing schedule and the parties agreed to suspend discovery pending a ruling on Green

& Green's dispositive motion. On May 27, 2004, Green & Green filed the Motion along with a supporting affidavit by Peter von Meister. The Liquidation Trust filed its response to the Motion ("Response") on June 27, 2004 (Doc. 21). Green & Green filed a reply to the Response on July 5, 2004 (Doc. 22). Following a telephonic status conference initiated by the Court, Green & Green filed a second affidavit by Peter von Meister, along with exhibits ("von Meister Aff."), on October 6, 2004 (Doc. 23).

The Liquidation Trust seeks to avoid the Transfer under 11 U.S.C. § 547(b) and recover the amount of the First Payment from Green & Green under 11 U.S.C. § 550(a). The Liquidation Trust does not specifically state in either the Complaint or the Motion whether it is seeking recovery from Green & Green as an initial transferee under § 550(a)(1) or an immediate or mediate transferee under § 550(a)(2).

## IV. Factual Background

The facts of this case are straightforward and not in dispute. The undisputed factual allegations contained in the von Meister Affidavit and the documents attached to the affidavit are set forth below.

1. von Meister, an attorney with Green & Green, a Dayton, Ohio law firm, represented Bricker in an intentional tort lawsuit against Spinnaker Coating filed in January 2000. (von Meister Aff. ¶ 2.)

2. The lawsuit alleged that Bricker sustained severe injuries on June 7, 1999, as part of his assigned duties as an employee of Spinnaker Coating. (*Id.* ¶ 3.) Bricker's injuries included "bilateral displaced fractures of the thigh bones of both legs, displaced fractures of the upper left arm and forearm bones, fractures of the bones of the right hand, and permanent and unsightly scarring and disfigurement, as well as severe and permanent psychological injuries." (*Id.* ¶ 4.)

3. The parties settled. In accordance with the parties' settlement agreement, Spinnaker Coating agreed to make cash payments and fund a structured settlement for Bricker. Under the settlement terms, Spinnaker Coating funded the structured settlement. Spinnaker Coating agreed to deliver the cash payments required by the settlement agreement to Green & Green, as Bricker's attorney. The parties' settlement agreement did not call for the checks to be made jointly payable to Bricker and Green & Green. (*Id.* ¶ 6.)

4. The settlement agreement required three installment payments to Bricker only. The first two installments funded the structured settlement and provided cash to Bricker. Spinnaker Coating never paid the third installment. (*Id.* ¶ 9.)

5. Attached to the von Meister Affidavit, are a number of documents relating to the engagement of Green & Green by Bricker and the receipt and disbursement of the settlement proceeds to Bricker. (*Id.*, Exs. 1–6.)

 a. Exhibit 4 is a copy of a memorandum to Bricker from Green & Green stating that the cash component of the first installment would be delivered to Green & Green and requesting Bricker's authorization to endorse and deposit all of the proceeds into Green & Green's client trust account. Bricker signed the memorandum instructing Green & Green to handle the settlement proceeds as described. (*Id.*, Ex. 4.)

b. Exhibit 5 is a copy of the original check for the First Payment in the amount of $100,000 received by Green & Green on September 5, 2001 and made payable to Bricker and Green & Green. (*Id.,* Ex. 5.) According to von Meister, "[t]he addition of 'Green & Green' as a payee on the check was neither required by the CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE, nor was its inclusion requested." (*Id.* ¶ 10.)

c. Exhibit 3 is a copy of the First Settlement Disbursement Statement from Green & Green, which was approved by Bricker. The disbursement statement shows that Green & Green, with Bricker's authority, would make the Second Transfer—i.e., disburse $91,644.49 of the First Payment to Green & Green, and another law firm, for their contingent fees and expenses. Bricker would then receive the remaining balance of $8,355.51. (*Id.,* Ex. 3.)

6. According to the von Meister Affidavit, "[t]he funds due and belonging to ... Bricker, were at all times handled under the requirements of the applicable Disciplinary Rule [DR 9–102] and statute [Ohio Rev.Code § 4705.09]." (*Id.* ¶ 12.)[1]

7. The von Meister Affidavit also states that (1) "Green & Green, ... neither became entitled to, nor received for its own account or benefit, any proceeds of any check issued by Spinnaker [Coating] in payment of its settlement with Mr. Bricker until such checks were deposited pursuant to DR 9–102 and R.C. § 4705.09, and disbursement was approved, authorized, and directed by Mr. Bricker ...." (*Id.* ¶ 13.); (2) Green & Green was never a creditor of or attorney for Spinnaker Coating and "has at no time been entitled to any payment from any of the Spinnaker entities." (*Id.* ¶ 14.)

The Liquidation Trust did not file an opposing affidavit or other evidentiary material to challenge the factual allegations made in the von Meister Affidavit.

## V. Legal Analysis

### A. Standard of Review—Judgment on the Pleadings

Rules 12(c) and (h) of the Federal Rules of Civil Procedure are made applicable in adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr.P. 7012(b). Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed. Fed.R.Civ.P. 12(c). Rule 12(h) states that "[a] defense of failure to state a claim upon which relief can be granted, [and] a defense of failure to join a party indispensable under Rule 19, ... may be made ... by motion for judgment on the pleadings ...." Fed.R.Civ.P. 12(h). A court shall grant a motion for judgment on the pleadings "only where, construing the complaint in the light most favorable to the plaintiff, and accepting all of its factual allegations as true, the plaintiff can prove no set of facts in support of the claim that would entitle him to relief." *Smith v. City*

---

1. Disciplinary Rule 9–102 states, in relevant part, as follows: "(A) All funds of clients paid to a lawyer or law firm, ... shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated ...." Ohio Code of Prof. Resp. DR 9–102(A) (LEXIS 2004). Ohio Revised Code § 4705.09 states, in relevant part, that "[e]ach attorney who receives funds belonging to a client shall do one of the following: (a) [e]stablish and maintain one or more interest-bearing trust accounts ... and deposit all client funds held ...." Ohio Rev.Code Ann. § 4705.09(A)(2)(a) (Anderson 2003).

*of Salem,* 378 F.3d 566, 570 (6th Cir.2004) (citation omitted).

### B. Standard of Review—Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56 is made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056. On motion for summary judgment, the inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 511 (6th Cir.2003); *McKenzie v. BellSouth Telecomms., Inc.,* 219 F.3d 508, 512 (6th Cir.2000). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party satisfies its burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Lanier v. Bryant,* 332 F.3d 999, 1003 (6th Cir.2003); *McKenzie,* 219 F.3d at 512. The non-moving party may not meet this burden by resting on mere allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Mounts v. Grand Trunk W.R.R.,* 198 F.3d 578, 580 (6th Cir. 2000). "Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact." *McKenzie,* 219 F.3d at 512 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### C. Applicable Statutes

Sections 547(b) and 550(a) of the Bankruptcy Code govern, respectively, the avoidance and recovery of preferential transfers. A trustee may avoid certain prepetition transfers made by a debtor under § 547(b) of the Bankruptcy Code, which states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). If avoided, the trustee may recover the preferential transfer, or the value of the property transferred, un-

der § 550(a) and (b) of the Bankruptcy Code, which provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee or such transferee.

11 U.S.C. § 550(a) and (b).

■ Direct transferees of the debtor "are not entitled to avail themselves of the [good faith] defense set forth in § 550(b)(1)." *SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.)*, 214 B.R. 316, 318 (Bankr.S.D.Ohio 1997), *aff'd in part and rev'd in part on other grounds*, 224 B.R. 27 (6th Cir. BAP 1998). *See also Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 547 (9th Cir.1991) ("The 'good faith' defense of section 550(b) does *not* apply to the 'initial transferee' of the debtor or the 'entity for whose benefit such transfer was made,' and the trustee's power to recover from these entities under section 550(a)(1) is absolute.") (quoting 11 U.S.C. § 550(b)); *Tese–Milner v. Brune (In re Red Dot Scenic, Inc.)*, 293 B.R. 116, 118 (S.D.N.Y.2003) ("[T]he Code imposes strict liability on 'initial transferees' ...."); *Thompson v. Jonovich (In re Food & Fibre Prot., Ltd.)*,

168 B.R. 408, 420 (Bankr.D.Ariz.1994) ("The initial transferee is liable without regard to value, good faith or knowledge—if he is first in the chain, he must pay."); *Bucki v. Singleton (In re Cardon Realty Corp.)*, 146 B.R. 72, 79 n. 11 (Bankr. W.D.N.Y.1992) ("Because [defendant in preference and fraudulent conveyance action] was an initial transferee, she cannot avail herself of the 'good faith' defense of section 550(b) as argued by Defendants."). But in the case of immediate or mediate transferees of an initial transferee, recovery is barred if the transferee "takes for value, ... in good faith, and without knowledge of the voidability of the transfer avoided[.]" 11 U.S.C. § 550(b)(1). *See Leonard v. Mountainwest Fin. Corp. (In re Whaley)*, 229 B.R. 767, 773 (Bankr. D.Minn.1999) ("An initial transferee from the debtor is strictly liable. Mediate or immediate transferees in the chain out from the initial transferee may avoid liability by proving something akin to bona fide purchaser status.") (citations omitted).

**D. The Liquidation Trust may seek the avoidance and recovery of the Transfer, or its value, in the same proceeding.**

■ The Liquidation Trust seeks both to avoid the Transfer under § 547 and recover its value from Green & Green under § 550 of the Bankruptcy Code. As stipulated by the parties, the Liquidation Trust did not commence an action against Bricker to avoid the Transfer. Relying on *Greenwald v. Latham & Watkins (In re Trans–End Technology, Inc.)*, 230 B.R. 101 (Bankr.N.D.Ohio 1998), Green & Green argues that the Liquidation Trust must first avoid the Transfer to Bricker before it can maintain an action against Green & Green for recovery under § 550 of the Bankruptcy Code. For this reason, Green & Green also claims that Bricker's joinder as an indispensable party is a nec-

essary prerequisite to the Liquidation Trust's maintenance of a cause of action against Green & Green.

Green & Green's reliance on *Trans–End* is misplaced. In *Trans–End*, the dispute centered on "whether an alleged fraudulent transfer must be actually avoided before recovery is sought from any of the transferees, or whether an alleged fraudulent transfer must only be shown to be avoidable." *Trans–End*, 230 B.R. at 103. The trustee in *Trans–End* was seeking in the same adversary proceeding to avoid a fraudulent transfer made to the debtor's parent company and obtain recovery from a subsequent transferee. In *Trans–End*, the Latham & Watkins law firm represented Clean–Up Technology ("CUT"), the parent company of the debtor, Trans–End Technology, Inc. ("Trans–End"). Before filing for bankruptcy relief, Trans–End transferred approximately $458,000 to CUT. CUT then transferred about $180,000 of the $458,000 received from Trans–End to Latham & Watkins for payment of legal services. The Chapter 11 trustee sought to recover the transfer from CUT to Latham & Watkins. *Id.* at 102. Arguing that he needed only to prove that the initial transfer between Trans–End and CUT was avoidable, the trustee sought to recover from Latham & Watkins as a subsequent transferee under § 550 of the Bankruptcy Code. *Id.* at 103. The court was unable to "reconcile" the trustee's position, however, with the "plain language of § 550(a) which requires that an initial transfer be avoided ... before recovery is sought ...." *Id.* at 104. The *Trans–End* court held that "based on the plain language of 11 U.S.C. § 550,... a prerequisite to recovery from any transferee is that the initial transfer must first be avoided rather than merely proven to be avoidable." *Id.* at 105.

Here, the Liquidation Trust seeks to avoid a transfer that was made payable *both* to Green & Green and Bricker. Unlike the Chapter 11 trustee in *Trans–End*, the Liquidation Trust here is not seeking a declaration that the Transfer to Bricker is an avoidable preference and attempting to bootstrap that finding into a recovery from a subsequent transferee. Rather, the Liquidation Trust is seeking to avoid an initial transfer—the First Payment—that was actually made *both* to Green & Green and Bricker as joint payees of the $100,000 check from Spinnaker Coating. The *Trans–End* holding would apply only if (1) the Transfer had been made payable *only* to Bricker and (2) he subsequently transferred the funds to Green & Green. But that is not the case here—the Liquidation Trust is seeking both to avoid the First Payment and recover the Second Transfer to Green & Green. *Trans–End* therefore is inapposite.

■ The Court recognizes that avoidance and recovery of an alleged preferential transfer (or its value) are "distinct concepts and processes." *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir.2003). And, as the Sixth Circuit explained in *Burns*, avoidance does not necessarily trigger recovery:

First, avoidance and recovery are distinct concepts and processes. This is clear from both the statute itself and from its legislative history. Avoidance and recovery are addressed in two separate sections of the code, 11 U.S.C. § 54[7] and § 550, respectively, and have two separate statutes of limitations, 11 U.S.C. § 546(a) and § 550(f), respectively. According to the House Report for the Bankruptcy Reform Act of 1978, § 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R.Rep. No. 95–595, at 375 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6331. The fact that avoidance and recovery are

distinct does not mean that avoidance cannot trigger recovery, but it does suggest that avoidance need not always trigger recovery.

Second, the fact that avoidance is a necessary precondition to § 550 recovery does not imply that avoidance is a sufficient condition for § 550 recovery or that avoidance automatically triggers § 550 recovery. The trustee's remedy of recovery is necessary only when the remedy of avoidance is inadequate. That is, when the avoidance of a transfer does not fully satisfy the estate, then the trustee may seek to recover the property transferred, but when the avoidance alone is a sufficient remedy, there is no need for the trustee to seek recovery.... [W]e conclude that the language of § 550, stating that the "trustee *may* recover" property following avoidance ... is permissive rather than mandatory (the trustee "must" recover) or descriptive (the trustee "thereby" recovers).

*Burns*, 322 F.3d at 427–28 (citations omitted). Simply stated, if a transfer is preferential under § 547(b) of the Bankruptcy Code and the exceptions under § 547(c) do not apply, the Court then must look to § 550(a) to determine from whom the trustee may recover either the property transferred or its value. *See Harrison v. Brent Towing Co., Inc. (In re H & S Transp. Co., Inc.)*, 939 F.2d 355, 358 (6th Cir.1991). Thus, it is appropriate to file an action that seeks both to avoid a transfer under § 547(b) and recover the transfer or value thereof under § 550 of the Bankruptcy Code. *See 5 Collier on Bankruptcy* ¶ 550.02 at n. 1 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed., rev. 2005) ("In most cases, actions to avoid transfers under a particular avoiding power will be brought in tandem with an action to recover the property transferred or its value under section 550."). And the Court must evaluate the two forms of relief requested by the Liquidation Trust—avoidance and recovery—separately. Because the Liquidation Trust is seeking to avoid a transfer made directly to Green & Green (the $100,000 First Payment made *jointly* payable *both* to Bricker and the law firm), the Court rejects Green & Green's contention that a necessary prerequisite to the commencement of this adversary proceeding was avoidance of the Transfer to Bricker.

**E. The Transfer is avoidable under 11 U.S.C. § 547(b).**

 The Liquidation Trust has the burden of establishing that the Transfer is avoidable as a preference. *See* 11 U.S.C. § 547(g). The burden then shifts to Green & Green to demonstrate the applicability of a § 547(c) defense to avoidability of the Transfer. *See id.* Here, the Liquidation Trust has established all the elements necessary to avoid the Transfer under § 547(b) of the Bankruptcy Code. There is no dispute that the First Payment was the transfer of an interest of the Debtor in property. *See* 11 U.S.C. § 547(b). The check evidencing the Transfer was drawn on a Spinnaker Coating account with Key Bank of Maine in the amount $100,000 and, thus, was unquestionably property of the Debtor's estate. *See* 11 U.S.C. § 541(a)(1) (defining property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case").

 Next, the Transfer was made "to or for the benefit of a creditor[.]" 11 U.S.C. § 547(b)(1). Green & Green was not a creditor of Spinnaker Coating. Bricker was a creditor, however, by virtue of Spinnaker Coating's settlement obligations to him. While the First Payment was in the form of a check made payable both to Bricker and Green & Green, it was made for the benefit of Bricker. Because Green & Green accepted the check for the benefit of Bricker, the Transfer was "to or for the

benefit of a creditor" within the meaning of § 547(b)(1).

The Transfer was also made "for or on account of an antecedent debt owed by the debtor before such transfer was made[.]" 11 U.S.C. § 547(b)(2). The Bankruptcy Code does not define "antecedent debt." Courts have held, however, that "the term includes a debt incurred before the transfer." *Whittaker v. BancOhio Nat'l Bank (In re Lamons),* 121 B.R. 748, 750 (Bankr. S.D.Ohio 1990) (citations omitted). As the von Meister Affidavit establishes, the First Payment was made as part of the settlement of Bricker's lawsuit against Spinnaker Coating. The settlement obligation is therefore an antecedent debt since it arose before the Transfer was made.

■ The Liquidation Trust must next establish that the Transfer was made while the Debtor was insolvent. 11 U.S.C. § 547(b)(3). Section 547(f) of the Bankruptcy Code states that "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). This is a rebuttable presumption and "in the absence of evidence to rebut the presumption, the Trustee is entitled to rely on the § 547(f) presumption to establish the debtor's insolvency." *Whittaker v. Citra Trading Corp. (In re Int'l Diamond Exch. Jewelers, Inc.),* 177 B.R. 265, 269 (Bankr.S.D.Ohio 1995) (citation omitted). Green & Green has offered no evidence to rebut the insolvency presumption.

Nor is there a dispute that the Transfer was made within 90 days of the Petition Date. The check was received by Green & Green on September 5, 2001—68 days prior to the Petition Date. von Meister Affidavit ¶ 9, Ex. 5. Thus, § 547(b)(4)(A)'s requirement that a transfer be made "on or within 90 days before the date of the filing of the petition[,]" also has been established

by the Liquidation Trust. 11 U.S.C. § 547(b)(4)(A).

■ Finally, the Liquidation Trust has met § 547(b)(5)'s requirement that the alleged preferential transfer must "enable[ ] [the] creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5). Under § 547(b)(5), the plaintiff asserting a preference claim must establish what a creditor would receive in a "hypothetical chapter 7" case and "[u]nless the estate is sufficient to provide a 100% distribution, any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have received under a chapter 7 liquidation." *Citra Trading,* 177 B.R. at 270 (citing *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 464–65 (6th Cir.1991)). Under the Plan, unsecured creditors will not receive a 100% distribution on their prepetition claims. The Transfer enabled Bricker to receive more than he would have received under a hypothetical Chapter 7 liquidation and more than unsecured creditors will receive under the Plan, thus satisfying § 547(b)(5).

In sum, the Liquidation Trust has established all of the requirements for avoidance set forth in § 547(b), and Green & Green has raised no defenses to avoidance under § 547(c). The Court accordingly holds that the Transfer is an avoidable preference.

**F. Green & Green is not an initial transferee under 11 U.S.C. § 550(a)(1).**

■ Having determined that the Transfer is avoidable, the Court must next

address whether recovery from Green & Green is allowed under § 550 of the Code. A trustee may recover a transfer avoided under § 547, or the value of the property transferred, from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Recovery also may be sought against any "immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2). "An initial transferee is one who receives money from a person or entity later in bankruptcy, and has dominion over the funds. A mediate or immediate transferee is simply one who takes in a later transfer down the chain of title or possession." *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992).

In *Baker & Getty* the Sixth Circuit applied the "dominion-and-control" test first articulated by the Seventh Circuit Court of Appeals in *Bonded Financial Services Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988). To be deemed an initial transferee for purposes of § 550(a)(1), " '[t]he minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes.' " *Baker & Getty*, 974 F.2d at 722 (quoting *Bonded*, 838 F.2d at 893). Other courts also have adopted this dominion-and-control test for determining whether someone is an initial transferee within the meaning of § 550(a)(1) of the Bankruptcy Code. *See Sec. First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 141 (5th Cir.1993) ("[A]n entity does not have dominion and control over the money until it is, in essence, 'free to invest the whole [amount] in lottery tickets or uranium stocks' if it wishes.") (quoting *Bonded*, 838 F.2d at 894); *Lifecare Techs., Inc. v. Berman Law Firm, P.A. (In re Lifecare Techs., Inc.)*, 305 B.R. 88 (Bankr.M.D.Fla. 2003) (adopting dominion-and-control test

to determine whether recipient of preferential transfer was an initial or indirect transferee); *Belford v. Breck (In re Med. Cost Mgmt., Inc.)*, 115 B.R. 406, 408 (Bankr.D.Conn.1990) ("An initial transferee must have the right to control the transferred funds, rather than merely be a conduit for the entity who has that right.") (citations omitted).

In determining whether Green & Green had dominion and control over the First Payment sufficient to deem the law firm an initial transferee under § 550(a)(1), the Court is guided by the bankruptcy court's analysis in *Lifecare Technologies*, a case that factually is nearly on all fours with the present case. There, the debtor-in-possession, Lifecare Technologies, Inc. ("Lifecare") commenced an adversary proceeding against the Berman Law Firm, P.A. ("Berman Firm"), and others, to avoid and recover alleged preferential transfers. Prior to Lifecare's bankruptcy filing, the Berman Firm represented Ron Bradley ("Bradley"), the president and sole shareholder of Innovative Direction, Inc. ("Innovative"), in an action to recover unpaid commissions from Lifecare. As part of the retention agreement between the Berman Firm, Bradley and Innovative, the Berman Firm agreed to accept as its fee 20% of any amounts recovered from Lifecare. The parties settled in December, 2000 and Lifecare agreed to pay a total of $60,000 with an initial payment of $10,000 and $5000 per month thereafter until paid in full. Lifecare issued checks payable to the "Berman Law Firm, P.A. Trust Account." Upon receipt of the funds, the Berman Firm would disburse 80% to Innovative and 20% to the Berman Firm as authorized under the retention agreement. *Lifecare Techs.*, 305 B.R. at 90. The parties did not dispute that Lifecare made two payments totaling $10,000, payable to the Berman Firm, within the 90 days prior to the bankruptcy filing. The Berman Firm

deposited those payments into its trust account. It was also undisputed that the Berman Firm was not a creditor of Lifecare but instead the attorney for a creditor of Lifecare. Finally, there was no dispute regarding the Berman Firm's subsequent transfer of a portion of the payments from the trust account to its operating account to satisfy the fees owed to the firm by its clients. *Id.* at 91. These facts were established by an affidavit filed by the Berman Firm. Lifecare did not file an opposing affidavit or other evidentiary material to counter the allegations made in the Berman Firm's affidavit. *Id.*

The Berman Firm filed a motion for summary judgment, arguing that it was not an initial transferee or creditor of Lifecare under § 550(a)(1), and it was a good-faith transferee within the meaning of § 550(b) of the Bankruptcy Code. *Id.* at 90. The *Lifecare Technologies* court concluded that the Berman Firm was not an initial transferee but "was instead simply the attorney who represented the Plaintiff's creditors in litigation against the Plaintiff." *Id.* at 92. The court emphasized that the payments were payable specifically to the Berman Firm's trust account and this account was separately maintained from the firm's operating account. From the trust account, the Berman Firm paid Innovative, which was a creditor of Lifecare, and only then disbursed funds to its operating account in satisfaction of outstanding fees. The court concluded that the Berman Firm did not exercise dominion and control over the funds paid by Lifecare to its trust account, reasoning:

> Berman was obligated to disburse the funds in accordance with the instructions from its clients, and had no discretion regarding how the money could be spent. The money was paid by the Plaintiff for the benefit of Berman's clients, not for Berman's benefit. Berman was not the "initial transferee"

within the meaning of § 550(a)(1) of the Bankruptcy Code, and is therefore not subject to strict liability for the allegedly avoidable transfer.

*Id.* at 92–93.

Just as in *Lifecare Technologies*, the settlement proceeds here were paid for the benefit of Green & Green's client—Bricker, a Spinnaker Coating creditor—not for the benefit of the law firm, which was not a creditor of Spinnaker Coating. And, like the Berman Firm in *Lifecare Technologies*, Green & Green did not have discretion as to how the proceeds of the First Payment could be spent. Green & Green was not free to "put the money to [its] own purposes," *Baker & Getty,* 974 F.2d at 722 (quoting *Bonded,* 838 F.2d at 893); the firm could not have lawfully "invest[ed] the whole [amount] in lottery tickets or uranium stocks." *Coutee,* 984 F.2d at 141 (quoting *Bonded,* 838 F.2d at 894). Rather, Green & Green was required to "disburse the funds in accordance with instructions from its client[ ]." *Lifecare Techs.,* 305 B.R. at 92–93. Thus, because Green & Green did not have sufficient dominion and control over the First Payment to be deemed an initial transferee, the firm is not subject to strict liability for the avoided Transfer under § 550(a)(1) of the Bankruptcy Code. *Lifecare Techs.,* 305 B.R. at 93. *See also Coutee,* 984 F.2d at 141 (finding that law firm did not have dominion and control over settlement funds and thus was not an initial transferee under § 550(a)(1) because "firm's role with respect to the received money was to accept the funds in settlement of its client's case, deposit the money in trust [and] keep as fees what the [debtors] agreed to"); *Ducker v. Fairmeadows II (In re Bridges Enters., Inc.),* 62 B.R. 300, 303 (Bankr. S.D.Ohio 1986) (holding that attorneys who "served as the conduit to effect a settlement between the debtor and [creditor]" were not initial transferees within the

meaning of § 550(a)(1)); *Gropper v. Unitrac (In re Fabric Buys of Jericho, Inc.)*, 33 B.R. 334, 337 (Bankr.S.D.N.Y.1983) (determining that law firm that accepted settlement check on behalf of client, deposited check into escrow account separate from firm's operating accounts and paid funds to client was mere conduit, not initial transferee).

**G. The Court cannot determine as a matter of law whether Green & Green took the Second Transfer from Bricker for value, in good faith and without knowledge of its voidability.**

■■■■■ While Green & Green is not an initial transferee within the meaning of § 550(a)(1), the firm is an immediate or mediate transferee under § 550(a)(2) of the Bankruptcy Code. An immediate or mediate transferee may assert the defenses to recovery under § 550(b)(1), which provides that a "trustee may not recover under subsection (a)(2) of this section from—(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided[.]" 11 U.S.C. § 550(b)(1). *See also Ray v. City Bank & Trust Co. (In re C–L Cartage Co., Inc.)*, 899 F.2d 1490, 1495 (6th Cir.1990) (remanding case for determination of whether mediate transferee was entitled to § 550(b)(1) defenses). The burden of establishing the § 550(b) defenses is on the transferee. *See IRS v. Nordic Vill., Inc. (In re Nordic Vill., Inc.)*, 915 F.2d 1049, 1055 (6th Cir.1990), *rev'd on other grounds sub nom. U.S. v. Nordic, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *but see Med. Cost Mgmt.*, 115 B.R. at 409 ("In order to recover from ... a mediate or immediate transferee, the plaintiff has the burden of proving that [defendant] did not take the transfer for value, in good faith, and that he had knowledge of the voidability of the

transfer."). The Liquidation Trust may recover the Transfer, or its value, from Green & Green as an immediate or mediate transferee unless Green & Green demonstrates that it received the payment of its fees "for value, in good faith, and without knowledge of the voidability of the transfer[.]" 11 U.S.C. § 550(b).

■■■■■ To be insulated from preference liability under § 550(b), an immediate or mediate transferee must first demonstrate that it took the alleged preferential transfer for value. 11 U.S.C. § 550(b)(1). As explained by the Seventh Circuit Court of Appeals, "[t]he statute does not say 'value to the debtor'; it says 'value'. A natural reading looks to what the transferee gave up rather than what the debtor received." *Bonded*, 838 F.2d at 897. Green & Green received a portion of the First Payment, as directed by Bricker, in satisfaction of attorneys' fees that were due and owing from Bricker. This receipt of funds in exchange for services previously rendered is sufficient to establish that Green & Green took the transfer for value under § 550(b)(1) of the Bankruptcy Code. *See Med. Cost Mgmt.*, 115 B.R. at 409 (transfer was for value because "it was fair compensation for hours of legal services actually performed."). But, to establish a complete defense to recover under § 550(b)(1) Green & Green must also demonstrate that it received the Second Transfer (in payment of its fees and expenses) "in good faith and without knowledge of the voidability of the transfer avoided[.]" 11 U.S.C. § 550(b)(1). Citing the legislative history of § 550(b)(1), the *Bonded* court discussed the purpose of the good faith requirement:

> The phrase "good faith" in [§ 550(b) ] is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property to an innocent transferee, and receiving a

transfer from him, that is, "washing" the transaction through an innocent third party. In order for the transferee to be excepted from liability ... he himself must be a good faith transferee.

*Bonded,* 838 F.2d at 897 (quoting H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 376 (1978); S.Rep. No. 95–989, 95th Cong., 2d Sess. 90 (1978), 1978 U.S.C.C.A.N. 5787, 5876, 6332). A court may infer the lack of good faith if "the recipient of a voidable transfer ... possessed enough knowledge of events to induce a reasonable person to investigate[ ]" the potential voidability issue. *See id.; see also Nordic Vill.,* 915 F.2d at 1056 (check had notation indicating transfer was illegitimate and court concluded IRS had sufficient inquiry notice to realize problem with accepting the check); *Smith v. Mixon,* 788 F.2d 229, 232 n. 2 (4th Cir.1986) ("transferee should be held to have knowledge of the voidability of the transfer if, *inter alia,* he has reasonable cause to believe that a petition may be filed.") (citation omitted).

As noted above, neither the Motion nor the supporting affidavits address the issue of whether Green & Green took the Second Transfer in good faith and without knowledge of its voidability. The issue of whether Green & Green may successfully invoke the good-faith-transferee defense provided by § 550(b)(1) thus must await further proceedings in this case.

## VI. Conclusion

For these reasons, the Motion will be **GRANTED** in part and **DENIED** in part. The Court concludes as a matter of law that (1) the Transfer is an avoidable preference under 11 U.S.C. § 547(b); and (2) the Transfer is not recoverable from Green & Green under 11 U.S.C. § 550(a)(1). The issue of whether the Second Transfer is recoverable from Green & Green under 11 U.S.C. § 550(a)(2) or, alternatively, Green & Green is a good-faith transferee within the meaning of 11 U.S.C. § 550(b)(1) must await further proceedings in this case.

**IT IS SO ORDERED.**